OPINION
{¶ 1} Appellant, B.L., Sr., appeals from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating his parental rights and placing his son, B.L., in the permanent custody of appellee, Franklin County Children's Services ("FCCS"). For the following reasons, we affirm that judgment.
 {¶ 2} On January 9, 1996, B.L. was born to appellant and Misty Parker. Appellant and Parker lived together but were not (and still are not) married. Parker has three other children who live with her and appellant: Eric Parker, born July 14, 1987; Heather Lewis, born February 18, 1993; and, Tiffany Lewis, born August 1, 1999. These children are not involved in this custody proceeding. B.L. was born prematurely and suffers from cerebral palsy. He also has global developmental delays that cause him to lag behind in his mental and speech development as well as his social and motor skills. B.L. is on many medications and, until recently, had to be fed through a feeding tube. For reasons that are not clear from the record, FCCS removed B.L. from his parent's home in October 1996. He was returned to their home in late 1999 or early 2000.
 {¶ 3} B.L. was seen by doctors at Children's Hospital in 2000 and 2001 because his social workers had concerns about his failure to thrive in his parent's care. The doctors were concerned that B.L. was malnourished and not gaining sufficient weight. They also thought that Parker was not properly giving B.L. his nutritional supplements and was breaking appointments with B.L.'s nutritionist. In late 2001, Children's Hospital referred B.L. to FCCS due to these concerns. FCCS removed B.L. from his parent's household in December 2001, due to its ongoing concerns about B.L.'s failure to thrive and because B.L. had bruises on his body. He was placed in foster care and has been in foster care continuously since that time.
 {¶ 4} On June 4, 2002, FCCS filed a complaint seeking legal custody of B.L. The complaint alleged that B.L. was an abused, neglected, and dependent child. The next day, a magistrate awarded FCCS temporary custody of B.L. pending further hearing. The trial court held an adjudicatory hearing on August 15, 2002, at which time the parties agreed that B.L. should be adjudicated a dependent child. The allegations of abuse and neglect were dismissed. On September 4, 2002, the trial court awarded FCCS temporary custody of B.L.
 {¶ 5} On April 24, 2003, FCCS requested permanent custody of B.L. pursuant to R.C. 2151.413. Appellant subsequently filed a brief asserting a variety of arguments in support of his claim that R.C. 2151.413 and2151.414 were unconstitutional. The trial court rejected those arguments based upon this court's decision in In re Thompson (Apr. 26, 2001), Franklin App. No. 00AP-1358 ("Thompson I"). The trial court then held four days of hearings in April, May, and September of 2004. Appellant failed to appear on any of the hearing dates. The trial court concluded that B.L. could not be placed with either parent within a reasonable time and should not be placed with either parent in the foreseeable future. The trial court further determined that granting permanent custody of B.L. to FCCS was in B.L.'s best interest. Accordingly, the trial court granted FCCS permanent custody of B.L. and terminated any and all parental rights, privileges, and obligations of appellant and Misty Parker.
 {¶ 6} Appellant appeals, assigning the following errors:
I. Trial Court erred in failing to recognize that the Parental rights of Appellant are substantively protected under the First Amendment of the United States Constitution ("fundamental expression of speech and right of association") and the corresponding provisions of the Ohio Constitution in contravention of Griswold v. Conn. (1965), 381 U.S. 479,481-486, and Roberts v. United States Jaycees (1984), 468 U.S. 609, 618, and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Substantive Due Process; (3) Fundamental Unfairness; and (4) Denial of equal protection of the laws.
II. The Trial Court erred in failing to recognize that Appellant, a parent, has a right to raise facial challenges under the First Amendment ("fundamental expression of speech and right of association") and the corresponding provisions of the Ohio Constitution against R.C. 2151.413
and 2151.414 in contravention of Broadrick v. Oklahoma (1973),413 U.S. 601, 612; Griswold v. Conn. (1965), 381 U.S. 479, 481; Goodingv. Wilson (1972), 405 U.S. 518, 520-521; and State ex rel. Real DoorBookstore v. Tenth Dist. Court of Appeals (Ohio 1992), 588 N.E.2d 116, 120 and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Substantive Due Process; (3) Fundamental Unfairness; and (4) Denial of equal protection of the laws.
III. The Trial Court erred in failing to apply the strict scrutiny analysis as mandated under the United States and Ohio Constitutions in contravention of Troxel v. Granville (2000), 530 U.S. 57, 65-66; Clarkv. Jeter (1988), 486 U.S. 456, 461; Sorrell v. Thevenir (1994),69 Ohio St.3d 415, 423, * * * and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Substantive Due Process; (3) Fundamental Unfairness; and (4) Denial of equal protection of the laws.
IV. Trial Court erred in denying Appellant's Motion to Dismiss FCCS's Motion for Permanent Custody on the basis that the motion was not deposed (sic) of, and the order journalized, no later tha[n] 200 days after the motion was filed in violation of R.C. 2151.414(A)(2) and further in violation of Appellant's fundamental rights pursuant to the First andNinth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Substantive Due Process; (3) Fundamental Unfairness; and (4) Denial of the equal protection of the laws.
V. The Trial Court erred in terminating Appellant's parental rights in that R.C. 2151.413 and 2151.414, facially and as applied to Appellant, are unconstitutional and therefore void on the basis that the statutory provisions create discriminate classifications, those who suffer the loss of their children to permanent custody and those who retain their rights under R.C. 2151.413 and 2151.414 as well as other parents who in custodial proceedings, i.e., Title 31 of the Ohio Rev. Code, maintain their parental rights even in the extreme circumstance of parental unfitness, with disproportionate treatment that do not meet the stringent requirements of the Strict Scrutiny test pursuant to Troxel v.Granville, (2000), 530 U.S. 57, in violation of the First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Violation of Appellant's freedom of expression and right of association; (2) "per se" overbroad; (3) Arbitrary, invidious discriminatory, and capricious; (4) Denial of Substantive Due Process; (5) Fundamental Unfairness; and (6) Denial of the equal protection of the laws.
VI. The trial court erred in terminating Appellant's parental rights in that R.C. 2151.413 and 2151.414, in whole, and, in part, R.C.2151.414(B)(1), facially and as applied to Appellant, are unconstitutional and therefore void under the United States and Ohio Constitutions on the basis that the statutory provisions place primary emphasis on the best interest of the child in all permanent custody proceedings in contravention of Troxel v. Granville, (2000), 530 U.S. 57,65-66, 68-69, 87 [Stevens, J., dissenting]; further in contravention ofSantosky v. Kramer (1982), 455 U.S. 745, 760; and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness and overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) Denial of Substantive Due Process; (4) Fundamental Unfairness; and (5) Denial of the equal protection of the laws.
VII. The Trial Court erred [at a minimum, Plain Error] in allowing the child's appointed counsel to commit ineffective assistance of counsel regarding the representation of the child in the proceedings of the lower court in violation of the First, Sixth, Ninth, and Fourteenth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Two, Three, Ten, Sixteen, and Twenty with regard to the following grounds: (1) Denial of the fundamental right of the child to effective assistance of counsel; (2) Denial of the fundamental freedom of expression and right of association; (3) Denial of Substantive Due Process; (4) Fundamental Unfairness; and (5) Denial of the equal protection of the laws.
VIII. The Trial Court erred in not declaring R.C. 2151.414(B)(1)(d), facially and as applied to Appellant, are unconstitutional and therefore void under the United States and Ohio Constitutions * * * on the basis that the statutory provision creates an irrebuttable presumption of parental unfitness in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article One, Bill of Rights, Sections One, Three and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness and Overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) Denial of Substantive Due Process; (4) Fundamental Unfairness; and (5) Denial of the equal protection of the laws.
IX. The Trial Court erred in not declaring R.C. 2151.414(B) * * * facially and as applied to Appellant, are unconstitutional and therefore void in that it violates the First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Substantive Due Process; (3) Fundamental Unfairness; and (4) Denial of the equal protection of the laws. Appellant, a class representative, respectfully declares that his substantially important fundamental right to raise his child, which is substantively protected under the United States and the Ohio Constitutions is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, the standard of proof should be "beyond a reasonable doubt" consistent with the United States and Ohio Constitutions.
X. The Trial Court erred in not declaring R.C. 2151.413(D)(1) * * * facially and as applied to Appellant, unconstitutional and therefore void in that it violates the "Separation of Powers" ("check and balances") doctrine explicitly and implicitly set forth in the United States and the Ohio Constitutions and further violates the Appellant's fundamental rights which are substantively protected under the First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Violation of Appellant's freedom of expression and right of association; (2) Denial of Substantive Due Process; (3) Fundamental Unfairness; and (4) Denial of the equal protection of the laws.
XI. The Trial Court erred in not declaring R.C. 2151.414(D)(1) * * * facially and as applied to Appellant, unconstitutional and therefore void under the United States and the Ohio Constitutions in that the statutory provisions as to the emphasized language is immaterial and irrelevant, is arbitrary, capricious, and invidious, is contrary to and inconsistent with the Court's mandate in Troxel v. Granville, (2000), 530 U.S. 57, that parental rights to raise their children is paramount to all other asserted rights, and further is "Per se" overbroad in violation of the First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Violation of Appellant's freedom of expression and right of association; (2) "Per Se" Overbroad; (3) Denial of Substantive Due Process; (4) Fundamental Unfairness; and (5) Denial of the equal Protection of the laws.
XII. The Trial Court erred in not declaring that Appellant, a class representative and the natural father of the children at issue in this proceeding, and other parents in similar circumstances, are fundamentally entitled to a jury trial in proceedings to terminate their Parental rights that are characterized as trespass by the state upon the natural rights of the persons in question in these proceedings in accordance with the First, Seventh, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, of the United States Constitution and Sections One, Two, Three, Five, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights. Appellant further asserts that his substantially important fundamental right is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, should be entitled to the same heightened protections consistent with the United States and Ohio Constitutions.
XIII. The Trial Court erred in finding that an award of permanent custody was in the best interest of the child pursuant to R.C. 2151.414(D) * * *.
XIV. The Trial Court erred in terminating Appellant's parental rights in that (1) the Trial Court failed to make an express finding of parental unfitness regarding Appellant and further (2) FCCS failed to overcome the presumption that Appellant is a fit parent pursuant to Troxel v.Granville, (2000), 530 U.S. 57, 65-66, 68-69, and further (3) in violation of Appellant's fundamental rights pursuant to the First andNinth Amendments of the United States Constitution and the Ohio Constitution, Article One, Bill of Rights, Sections One, Three and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Substantive Due Process; (3) Fundamental Unfairness; and (4) Denial of the equal protection of the laws.
XV. Trial Court erred in terminating Appellant's parental rights in regard to Appellant's child in violation of this Honorable Court's mandate set forth in In the Matter of Gibson, McGraw (July 19, 1979), Nos. 78AP-856, 857, unreported (1979 Opinions 2005) and further in violation of Appellant's fundamental rights pursuant to the First andNinth Amendments of the United States Constitution and the Ohio Constitution, Article One, Bill of Rights, Sections One, Three and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Substantive Due Process; (3) Fundamental Unfairness; and (4) Denial of the equal protection of the laws.
XVI. The decision of the Trial Court is against the manifest weight of evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions in light ofTroxel v. Granville, (2000), 530 U.S. 57.
XVII. The decision of the Trial Court is not supported by sufficient probative evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions in light ofTroxel v. Granville, (2000), 530 U.S. 57.
 {¶ 7} At the outset, we recognize that parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388;Troxel v. Granville (2000), 530 U.S. 57, 66, 120 S.Ct. 2054. The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise his or her child. In re Murray (1990), 52 Ohio St.3d 155, 157. These rights, however, are not absolute. In re Awkal (1994),95 Ohio App.3d 309, 315; In re Sims, Jefferson App. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. A parent's natural rights are always subject to the ultimate welfare of the child. In re Cunningham (1979),59 Ohio St.2d 100, 106. Thus, in certain circumstances, the state may terminate the parental rights of natural parents when necessary for the best interest of the child. In re Harmon (Sept. 25, 2000), Scioto App. No. 00CA-2694; In re Wise (1994), 96 Ohio App.3d 619, 624. The permanent termination of parental rights has been described as "`the family law equivalent of the death penalty in a criminal case.'" In reHayes (1997), 79 Ohio St.3d 46, 48, quoting In re Smith (1991),77 Ohio App.3d 1, 16. Therefore, parents "`must be afforded every procedural and substantive protection the law allows.'" Id.
 {¶ 8} In the interest of clarity, we address appellant's assignments of error out of order. In his fourth assignment of error, appellant contends the trial court erred when it refused to dismiss FCCS's motion for permanent custody on the grounds that it had not been disposed of and journalized within 200 days of filing. R.C. 2151.414(A)(2) mandates that a trial court shall dispose of motions for permanent custody no later than 200 days after the agency files the motion. However, this court has previously held that the failure to meet the 200-day timeframe contained in R.C. 2151.414(A)(2) does not provide a basis for attacking the validity of the judgment. In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580 at ¶ 31 ("Thompson II"). Although R.C. 2151.414(A)(2) does contain a 200-day time limit for a trial court to dispose of motions for permanent custody, it further provides that "[t]he failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court." Accordingly, the trial court did not err when it failed to dismiss FCCS's motion for permanent custody even though the trial court failed to dispose of the motion within 200 days of its filing. Appellant's fourth assignment of error is overruled.
 {¶ 9} Appellant contends in his second assignment of error that the trial court failed to recognize that he could raise facial constitutional challenges to R.C. 2151.413 and 2151.414. Appellant implies that the trial court prohibited him from raising his facial constitutional arguments. We disagree. The record indicates that appellant asserted a multitude of constitutional challenges to these statutes, including challenges based on the First Amendment to the United States Constitution and similar Ohio constitutional provisions. The trial court allowed appellant, through counsel, to argue these challenges before the hearing on FCCS's motion for permanent custody. The trial court simply found appellant's arguments unpersuasive. There is no indication in the record that the trial court prevented appellant from raising any of his constitutional challenges to these statutes. Accordingly, appellant's second assignment of error is overruled.
 {¶ 10} Appellant contends in his first assignment of error that the trial court did not recognize appellant's fundamental parental rights. However, there is no indication in the record that the trial court failed to recognize the importance of appellant's parental rights in this case. While the trial court did not issue a written decision rejecting appellant's constitutional challenges, the case law relied upon by the trial court in its oral decision recognizes the fundamental rights involved in a permanent custody proceeding. However, a parent's right to raise his or her child is not absolute. In re Cunningham, supra, at 106;In re Awkal, supra, at 315. After an evidentiary hearing, the trial court applied the statutory criteria and concluded that granting permanent custody of B.L. to FCCS was in B.L.'s best interest. Appellant offers no persuasive support for his argument that his parental rights are absolute and we are aware of no such authority. Therefore, appellant's first assignment of error is overruled.
 {¶ 11} Appellant's third, fifth, sixth, eighth, ninth, tenth, eleventh, and twelfth assignments of error all involve constitutional challenges to Ohio's statutory scheme governing permanent custody proceedings. This court has previously found these statutes and rules to be constitutional. Thompson I; Thompson II; In re Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, at ¶ 31. These decisions specifically considered and rejected the same arguments appellant makes in his sixth, ninth, tenth, and twelfth assignments of error. Accordingly, those assignments of error are overruled based upon that authority. To the extent that appellant raises constitutional challenges to the statutory scheme which have not previously been addressed by this court, we address those challenges below.
 {¶ 12} Legislative enactments are afforded a strong presumption of constitutionality. State v. Collier (1991), 62 Ohio St.3d 267, 269; Statev. Bennett, 150 Ohio App.3d 450, 2002-Ohio-6651, at ¶ 16. Thus, the party challenging a statute must prove that it is unconstitutional beyond a reasonable doubt. Id.
 {¶ 13} In determining the constitutionality of a legislative act, this court must first determine whether the party is challenging the act on its face or as applied to a particular set of facts. Yajnik v. AkronDept. of Health, Hous. Div., 101 Ohio St.3d 106, 2004-Ohio-357, at ¶14. An "as applied" challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct. Columbus v. Meyer,152 Ohio App.3d 46, 2003-Ohio-1270, at ¶ 31. In contrast, a facial challenge asserts that a law is unconstitutional as applied to the hypothetical conduct of a third party and without regard to the challenger's specific conduct. Id.
 {¶ 14} Appellant's constitutional challenges are all facial in nature, as they contest the constitutionality of statutes without regard to his own conduct. In fact, appellant presents no facts in his brief that would support a challenge to the application of these statutes to his own conduct. Facial challenges to the constitutionality of a statute are the most difficult to mount successfully, since appellant must establish that no set of circumstances exists under which the act would be valid. State v. Coleman (1997), 124 Ohio App.3d 78, 80. If a statute is unconstitutional on its face, the state may not enforce the statute under any circumstances. Ruble v. Ream, Washington App. No. 03CA14, 2003-Ohio-5969, at ¶ 17, quoting Women's Med. ProfessionalCorp. v. Voinovich (C.A.6, 1997), 130 F.3d 187, 193.
 {¶ 15} In his third assignment of error, appellant contends the trial court failed to apply a strict scrutiny analysis in assessing his constitutional challenges to these statutes. First, it is not clear that the trial court failed to apply strict scrutiny. In an oral decision, the trial court simply rejected appellant's constitutional challenges based upon Thompson I and Thompson II. Second, assuming strict scrutiny analysis applies, appellant offers no rationale for why these statutes fail under a strict scrutiny test. Appellant's unsupported assertions of unconstitutionality are insufficient to satisfy appellant's burden, particularly in light of the well-recognized presumption of constitutionality. It is appellant's burden to show beyond a reasonable doubt that these statutes are unconstitutional under every set of circumstances. Coleman, supra. Appellant fails to meet this burden. Therefore, appellant's third assignment of error is overruled.
 {¶ 16} Appellant argues in his fifth assignment of error that R.C.2151.413 and 2151.414 violate equal protection by unconstitutionally distinguishing between parents whose parental rights are terminated and parents who retain their parental rights. We disagree. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that no state shall deny to any person the equal protection of the laws. It prevents a state from treating people differently under its laws on an arbitrary basis. Harper v. VirginiaState Bd. of Elections (1966), 383 U.S. 663, 681, 86 S.Ct. 1079. Thus, an equal protection claim arises only in the context of an unconstitutional classification made by a state, i.e., when similarly situated individuals are treated differently. Conley v. Shearer (1992), 64 Ohio St.3d 284,288-289; State v. Chappell (Feb. 24, 1998), Franklin App. No. 97APA04-543. A law that operates identically on all people under like circumstances will not give rise to an equal protection violation.Conley, at 289.
 {¶ 17} R.C. 2151.413 and 2151.414 do not distinguish between groups of parents or treat similarly situated parents differently. Rather, the statutes operate identically to every parent whose children are involved in permanent custody proceedings. The statutes provide trial courts with guidance and direction in determining whether parents should or should not have their parental rights permanently terminated. The fact that trial courts may come to different conclusions in different cases based upon different facts is not a violation of the Equal Protection Clause. Appellant's fifth assignment of error is overruled. Cf. Thompson I.
 {¶ 18} Appellant contends in his eighth assignment of error that R.C.2151.414(B)(1)(d) is unconstitutional because it creates an irrebuttable presumption of parental unfitness. R.C. 2151.414(B)(1)(d) allows a trial court to grant permanent custody to FCCS if it is proven by clear and convincing evidence that the child has been in the temporary custody of a public children services agency or a private agency for 12 or more months of a consecutive 22 month period.[1] Contrary to appellant's assertion, the trial court did not award permanent custody under R.C.2151.414(B)(1)(d). Rather, the trial court awarded permanent custody of B.L. to FCCS based on R.C. 2151.414(B)(1)(a). Because R.C.2151.414(B)(1)(d) does not apply in this case, appellant's argument is misplaced. Appellant's eighth assignment of error is overruled. Thompson
I.
 {¶ 19} Appellant claims in his eleventh assignment of error that one of the factors a trial court must take into account under R.C.2151.414(D)(1) in determining the best interest of the child, is unconstitutional. Appellant contends the factor which considers the interaction of the child with his parents, siblings, relatives, foster caregivers, and any other persons who may affect the child, is irrelevant, arbitrary, overbroad, capricious, and contrary to the principles set forth in Troxel, supra. We disagree.
 {¶ 20} We again note that this court has already generally found the statues and rules governing awards of permanent custody to be constitutional. Thompson I. Moreover, the General Assembly has made the decision to include the relationships set forth in R.C. 2151.414(D)(1) as a factor that a trial court must take into account when determining what is in the best interest of the child. We do not believe that these relationships are irrelevant, arbitrary, overbroad, or capricious in considering what is in the child's best interest. They are relevant and important factors a trial court should consider. There is nothing arbitrary about a trial court inquiring about the child's relationship with important people in his or her life in determining custody.
 {¶ 21} Appellant also argues that this factor is contrary to the United States Supreme Court's mandate in Troxel that the parental right to raise children is paramount to all other asserted rights. We disagree. Troxel recognized that a parent's right to the care, custody, and control of their children is perhaps the oldest fundamental right recognized by the Court. Troxel at 65. It did not, however, hold such rights to be absolute and paramount to all other rights. In fact, the pluarity opinion in Troxel expressly refused to find specific nonparental visitation statutes which infringe upon the parent's fundamental rights to be per se unconstitutional. Each statute must be analyzed on its own to determine whether it impermissibly infringes upon the parent's fundamental rights when awarding visitation to a non-parent. Id. at 73. It is clear that while a parent does have a fundamental interest in the care, custody, and management of his or her child, these rights are not absolute. Cunningham, supra; Sims, supra. A state may terminate parental rights when such termination is in the best interest of the child.Harmon, supra; Cunningham. The relationships taken into account by R.C.2151.414(D)(1) are important considerations for a trial court to weigh in determining what is in the child's best interest. Appellant's eleventh assignment of error is overruled.
 {¶ 22} Appellant contends in his fourteenth assignment of error that the trial court erred by terminating his parental rights without making a finding that he was an unfit parent. We note that R.C. 2151.414 does not require that a trial court find a parent unfit before it may terminate that parent's parental rights. In re Stillman, 155 Ohio App.3d 333,2003-Ohio-6228, at ¶ 50. Here, the trial court terminated appellant's parental rights under R.C. 2151.414(B)(1)(a). Under that statute, a trial court must find that termination of parental rights is in the best interest of the child and that the child could not be placed with either parent within a reasonable time or should not be placed with them. Parental unfitness is not a finding that a trial court must make to terminate parental rights under that section.
 {¶ 23} Even if such a finding were required, we believe that a finding of parental unfitness is inherent in the trial court's finding that B.L. could not be placed with either of his parents within a reasonable time or should not be placed with them. For a trial court to find that a child could not be placed with either of his parents within a reasonable time or should not be placed with them, it must find that one or more of the circumstances listed in R.C. 2151.414(E) exist. All of the circumstances set forth in R.C. 2151.414(E) necessarily imply some level of parental unfitness, ranging from past criminal convictions involving the child as a victim to current parental deficiencies.
 {¶ 24} Because the trial court was not required to find appellant to be an unfit parent under R.C. 2151.414(B)(1)(a) and because in any event, such a finding was implicit in the trial court's finding that B.L. could not be placed with either of his parents within a reasonable time or should not be placed with them, appellant's fourteenth assignment of error is overruled.
 {¶ 25} Appellant argues in his fifteenth assignment of error that the trial court's award of permanent custody was in contravention of this court's mandate in In re Gibson (July 19, 1979), Franklin App. No. 78AP-856. We disagree. In that case, this court noted that permanent commitment is out of the question when there is a true parent-child relationship, and true love and affection flowing between the parent and child. Appellant contends that evidence of such a relationship was presented at the hearing. We first note that the Gibson case predates the enactment of R.C. 2151.414, which now governs the trial court's resolution of permanent custody proceedings. The language in Gibson
regarding love and affection flowing between the parties is not found in the new statute and is not a consideration a trial court must consider in making a decision regarding permanent custody. See Thompson II, at ¶ 62.
 {¶ 26} Additionally, the evidence in this case does not establish the presence of true love and affection flowing between appellant and his son. Appellant was not present at any of the hearings in this case and therefore did not testify about any love and affection he feels toward his son or that his son feels toward him. Misty Parker did not testify to any such love, and B.L. was not competent to testify. Although there was testimony that B.L. liked to play with appellant during visits, those visits were sporatic and are insufficient to establish that true love and affection flowed between appellant and his son. Appellant's fifteenth assignment of error is overruled.
 {¶ 27} Appellant's thirteenth, sixteenth, and seventeenth assignments of error all address the evidentiary support for the trial court's decision to terminate his parental rights and will be addressed together. Appellant contests the trial court's findings that an award of permanent custody to FCCS was in B.L.'s best interest and that he could not be placed with his parents within a reasonable time or should not be placed with them in the foreseeable future.
 {¶ 28} A decision to award permanent custody requires the trial court to take a two-step approach. First, a trial court must find whether any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twentytwo month period ending on or after March 18, 1999. R.C. 2151.414(B)(1).
 {¶ 29} In the present case, the trial court found that B.L. could not be placed with either parent within a reasonable time and should not be placed with either parent in the foreseeable future. Id. at (B)(1)(a). In making this determination, the trial court must find, by clear and convincing evidence, that one or more of the factors in R.C. 2151.414(E) exist. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb (1985), 18 Ohio St.3d 361, 368; Cross v.Ledford (1954), 161 Ohio St. 469, 477. Where the degree of proof required to sustain an issue is clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. Id.; In reGomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723, at ¶ 12.
 {¶ 30} In making its determination under R.C. 2151.414(E), the trial court found that the parents: (1) failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home pursuant to R.C. 2151.414(E)(1); (2) demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so and by other actions showing an unwillingness to provide an adequate permanent home for the child pursuant to R.C. 2151.414(E)(4); and, (3) abandoned B.L. pursuant to R.C. 2151.414(E)(10). While the trial court found three of the factors enumerated in R.C. 2151.414(E) existed in this case, only one of the factors is necessary for a court to find that the child cannot or should not be placed with the parents. In re B.E.M., Wayne App. No. 04CA0028, 2004-Ohio-4959, at ¶ 15; R.C. 2151.414(E).
 {¶ 31} The trial court had before it sufficient evidence to find, by clear and convincing evidence, that B.L.'s parents failed to substantially remedy the conditions causing the child to be removed from the house. The main concern that led to B.L.'s removal from Parker's home was his failure to gain weight. Dr. Doug McLaughlin, from Children's Hospital, testified that he and a nutritionist recommended a feeding routine of the Pedia Sure supplement for B.L. and that if the routine was followed, he would have expected B.L. to gain weight. However, B.L. did not gain sufficient weight after he was returned to his parents care and before he was taken into FCCS's custody. He did gain weight once placed in a structured foster care home designed for medically fragile children. B.L.'s parents also had a history of missed appointments with B.L.'s nutritionists.
 {¶ 32} The trial court also had before it sufficient evidence to find by clear and convincing evidence that B.L.'s parents demonstrated a lack of commitment toward him and an unwillingness to provide him with an adequate permanent home. Joan Snider, B.L.'s caseworker, testified that Parker did not involve herself or express an interest in participating in the types of therapy B.L. needed. Snider testified that appellant was similarly uninvolved. Snider also testified that appellant and Parker failed to visit with B.L. in many months before the hearing and in the three months between hearing dates in this case. In fact, Snider testified that appellant only took advantage of about ten percent of the weekly visits available to him since December 2001. Snider also noted that Parker lived in three different houses in three years. Eric Zellnar, FCCS's community service worker, testified that he would find B.L.'s feeding tube dirty and caked with a dried substance which might make it hard for food to get through. Snider and Zellnar both testified about the parents' failure to cooperate with FCCS's efforts to assist them in raising B.L. Nancy Wagner, a social worker at Children's Hospital, and Dr. McLaughlin both testified about their concerns regarding B.L.'s weight and the many missed appointments with a nutritionist. Finally, appellant did not appear at any of the four days of hearings during these proceedings to terminate his parental rights. These facts are clear and convincing evidence of appellant's lack of commitment to B.L.
 {¶ 33} Additionally, the trial court had before it sufficient evidence to find by clear and convincing evidence that appellant abandoned B.L. A child is presumed to be abandoned when the parent fails to visit or maintain contact with the child for more than 90 days. R.C. 2151.011(C). Testimony from all of B.L.'s social workers demonstrated appellant's failure to visit with him for over a year and a half. He finally started visiting B.L. during the six months before these hearings but, in the three months between hearing dates in this matter, appellant did not visit B.L. and made no effort to have any contact with him. Appellant was not present at any of the hearings in this case and did not explain his failure to visit or contact B.L. for those three months, a period of time long enough for the trial court to conclude that appellant had abandoned B.L.
 {¶ 34} Each of the trial court's R.C. 2151.414(E) findings were supported by sufficient evidence to satisfy the clear and convincing evidence standard. Accordingly, there was sufficient evidence to support the trial court's finding that B.L. could not be placed with either parent within a reasonable time and should not be placed with either parent in the foreseeable future.
 {¶ 35} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). In determining the best interest of a child, a trial court is required to consider all relevant factors including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and outof-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
 {¶ 36} The trial court noted in its decision that its determination of B.L.'s best interest was made pursuant to these factors. Such a determination must be shown by clear and convincing evidence. Id. at (B)(1). Therefore, we will review the record to determine whether sufficient evidence supports this finding. Gomer, supra.
 {¶ 37} As previously noted, R.C. 2151.414(D)(1) addresses the interaction of the child with his parents, relatives, and foster parents. B.L.'s caseworker and community service worker both testified about the lack of communication and interaction between B.L. and his mother during her visits and that B.L. was more interested in the whereabouts of his foster parents. Although there was some connection between B.L. and appellant, appellant visited much less often than Parker and had not visited B.L. for a significant period of time before this hearing. B.L.'s caseworkers testified that B.L. seemed much more attached to his foster parents than to appellant and Parker. His caseworker also described a very nurturing, caring, and bonded relationship between B.L. and his foster parents. B.L. also had very little interaction with his siblings during visits. The children were very distant and unattached with each other. This factor weighs in favor of the trial court's decision.
 {¶ 38} R.C. 2151.414(D)(2) is not implicated in this case, as the trial court noted that B.L. was not able to understand the proceedings or to communicate sufficiently to be able to express his own wishes. The trial court made this finding after an in camera interview of B.L.
 {¶ 39} Next, R.C. 2151.414(D)(3) concerns the custodial history of the child. As previously noted, FCCS removed B.L. from Parker's house in 1996, when he was only one. He was not returned to her until late 1999 or early 2000. Then, in December 2001, FCCS once again removed B.L. from the Parker home. He has not returned. Therefore, B.L. has lived outside of his parents' home for more than half of his life. This factor also weighs in favor of the trial court's decision.
 {¶ 40} R.C. 2151.414(D)(4) takes into account the child's need for a legally secure placement and whether that placement could be achieved without a grant of permanent custody to FCCS. B.L. is a medically-challenged child who has severe medical needs and requires much attention. Testimony from doctors and social workers indicated that B.L. was not gaining weight while in his parents care as a normal child should. B.L. did not gain weight after it was recommended to his parents that they supplement his diet with Pedia Sure. Dr. McLaughlin testified that he would have expected to see B.L. gain weight if his parents had followed that recommendation, but he did not see such weight gain. Snider testified that B.L. started to gain weight while living with his foster parents and had stopped using the feeding tube to eat. He also developed better motor skills and has been able to walk without a brace. His behavior, which was erratic, also became more controlled while in foster care. Significant evidence presented to the trial court demonstrates that B.L. has shown marked improvement in his health since being removed from his parent's home and needs the secure placement that can be achieved with a grant of permanent custody to FCCS in order to facilitate an adoption by parents who can give B.L. the time and care necessary for him to thrive. This factor also weighs in favor of the trial court's decision.
 {¶ 41} Finally, R.C. 2151.414(D)(5) takes into account whether certain of the R.C. 2151.414(E) findings exist. In this case, the trial court found that appellant abandoned B.L., one of the R.C. 2151.414(E) factors that a trial court may take into consideration. We have already determined that the trial court had before it sufficient evidence to allow the trial court to find by clear and convincing evidence that B.L. was abandoned. Accordingly, this factor also weighs in favor of the trial court's decision.
 {¶ 42} In conclusion, there was sufficient evidence for the trial court to find by clear and convincing evidence that B.L.'s best interests are served by placing him in the permanent custody of FCCS to facilitate his adoption into a permanent home. See In re James, Franklin App. No. 03AP-373, 2003-Ohio-5208, at ¶ 26.
 {¶ 43} The trial court had sufficient evidence before it to find by a clear and convincing standard that an award of permanent custody to FCCS was in B.L.'s best interest and that he could not be placed with his parents within a reasonable time or should not be placed with them in the foreseeable future. The same evidence also supports the conclusion that the trial court's judgment is not against the manifest weight of the evidence. See Thompson II. Accordingly, appellant's thirteenth, sixteenth, and seventeenth assignments of error are overruled.
 {¶ 44} Finally, in his seventh assignment of error, appellant contends that B.L. received ineffective assistance of counsel. Parents have standing to appeal an error committed against their children only if the error is prejudicial to the parents' rights. In re Smith (1991),77 Ohio App.3d 1, 13. Where the interests of a parent and a minor child coincide, in that each seeks reunification of the family, the parent may raise the issue on appeal. Id.; In re Moody (June 28, 2001), Athens App. No. 00CA5. Due to B.L.'s developmental delays, he was unable to express any wishes regarding his placement in this case. Therefore, we cannot say that appellant and his son both sought reunification of the family. Accordingly, appellant does not have standing to bring an ineffective assistance of counsel claim in this appeal. In re A.P.,
Cuyahoga App. No. 83220, 2004-Ohio-4080, at ¶ 24.
 {¶ 45} Even assuming that appellant had standing to bring this claim, a claim for ineffective assistance of counsel initially requires a showing that counsel was deficient. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. Appellant cannot make this showing. B.L. was incapable of expressing any wishes concerning his placement. The trial court held an in camera interview of B.L. and did not receive any intelligible or coherent responses from B.L.B.L.'s appointed counsel stated to the court that he met with B.L. twice and was unable to ascertain B.L.'s placement wishes. Simply put, B.L. was not capable of informing counsel of his wishes. Therefore, appointed counsel was not deficient by failing to advocate for B.L.'s wishes when those wishes were not known. Appellant's seventh assignment of error is overruled.
 {¶ 46} Having overruled appellant's 17 assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Brown, P.J., and Lazarus, J., concur.
[1] A trial court still must find that permanent custody is in the child's best interest. R.C. 2151.414(B)(1).