OPINION
{¶ 1} R.S. ("father"), appellant, appeals from the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in *Page 2 
which the court granted the motions of Franklin County Children Services ("FCCS"), appellee, for permanent court commitment ("PCC"). The guardian ad litem ("GAL") has also filed an appellate brief.
 {¶ 2} T.S., who was born July 4, 2004, and B.S., who was born July 1, 2003, are the daughters of father and J.R., their mother ("mother"). In October 2004, after the children had been previously involved with FCCS, the children were again placed in the custody of FCCS, based upon domestic violence between father and mother. The children were found to be dependent children, and temporary custody was granted to FCCS in February 2005. Various case plans were adopted from February 2005 to August 16, 2007. On April 6, 2006, FCCS filed a motion for PCC with regard to each child, alleging father had failed to utilize resources made available to him in order to reunify; failed to complete a psychological evaluation; failed to provide drug screens; failed to establish paternity; failed to obtain adequate housing and employment; and failed to maintain regular visitation.
 {¶ 3} A trial before a magistrate took place November 28 and December 5, 2006. Although mother did not appear, she was represented by counsel, who indicated that mother did not contest the granting of PCC to FCCS. Father appeared and was represented by counsel. On January 11, 2007, the magistrate granted FCCS's motions for PCC. Father filed objections to the magistrate's decisions, which the trial court overruled in separate judgments July 19, 2007. Father asserts the following assignment of error in this consolidated appeal:
 THE TRIAL COURT ERRORED [sic] WHEN IT FOUND THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN THAT PERMANENT CUSTODY BE AWARDED TO *Page 3 
FRANKLIN COUNTY CHILDREN SERVICES WHEN THE EVIDENCE DID NOT MEET THE STANDARD OF CLEAR AND CONVINCING EVIDENCE.
 {¶ 4} Father argues in his assignment of error that the trial court erred in granting the motions for PCC. A trial court's determination in a PCC case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312. Judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. CE. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, paragraph one of the syllabus. We therefore must weigh the evidence in order to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. Reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. Id., at 387, citing Martin.
 {¶ 5} A decision to award permanent custody requires the trial court to take a two-step approach. First, pursuant to R.C. 2151.414(B)(1), a trial court must find whether any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned. *Page 4 
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 6} Once the trial court finds that one of the circumstances in R.C.2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). FCCS must prove by clear and convincing evidence that an award of permanent custody is in the child's best interest. Id. Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt. Id.
 {¶ 7} With regard to the first step of the PCC analysis, in its motions, FCCS moved for PCC based upon R.C. 2151.414(B)(1)(a) and (d). Although the magistrate did not specifically cite any provision of R.C.2151.414(B)(1), it appears that the magistrate analyzed the cases under R.C. 2151.414(B)(1)(a), as it discussed R.C. 2151.414(E)(1), which would be one factor relevant to whether the children could not be placed with either of their parents within a reasonable time or should not be placed with their parents under R.C. 2151.414(B)(1)(a). However, the trial court, in addressing the father's objections to the magistrate's decisions, also noted that the children had been in the custody of FCCS for 12 months or more of a consecutive 22-month period prior to the magistrate's hearing *Page 5 
on November 28, 2006. Thus, it also appears that R.C. 2151.414(B)(1)(d) has been satisfied.
 {¶ 8} The time requirements under R.C. 2151.414(B)(1)(d) having been satisfied, it was unnecessary for the magistrate and the trial court to determine whether the children could or should be placed with either parent within a reasonable time under R.C. 2151.414(B)(1)(a) and2151.414(E)(1). See In re S.M., Franklin App. No. 05AP-1262,2006-Ohio-2529, at ¶ 12 (findings made under R.C. 2151.414[B][1][a] and [B][1][d] are in the alternative; either will independently support a grant of permanent custody), citing In re Sunderman, Stark App. No. 2004CA00093, 2004-Ohio-4608, at ¶ 48. Neither the GAL nor FCCS addressed in their appellate briefs any finding under R.C. 2151.414(B)(1)(a), with the GAL specifically noting R.C. 2151.414(B)(1)(d) applied, and both addressed only the best interest factors. Father's assignment of error also does not challenge whether the children were in FCCS's temporary custody for at least 12 months of a consecutive 22-month period under R.C. 2151.414(B)(1)(d), and he specifically contests only the best interest determination. Therefore, we find R.C. 2151.414(B)(1)(d) has been satisfied, and we need not address R.C. 2151.414(B)(1)(a).
 {¶ 9} Pursuant to R.C. 2151.414(B)(1), we must next determine whether permanent custody was in the best interest of the children. R.C.2151.414(D) provides that, in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's GAL, with due regard for *Page 6 
the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The factors set forth in R.C.2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.
 {¶ 10} Father's argument in his brief largely contests issues related to his progress toward completion of his case plan and does not specifically address the best interest factors under R.C. 2151.414(D). Although compliance with a case plan may be relevant to the trial court's best interest determination, it is not dispositive. See, e.g.,In re A.A., Summit App. No. 22196, 2004-Ohio-5955, at ¶ 9. To the extent that case plan compliance is relevant to the trial court's best interest determination pursuant to R.C. 2151.414(D), we will consider the arguments set forth by father.
 {¶ 11} The trial court's decisions indicate it considered the necessary best interest factors. See In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 53 (must be apparent the trial court considered the best interest factors). Our own review of the record *Page 7 
supports the trial court's findings that it was in the best interest of the children to grant PCC to FCCS.
 {¶ 12} With respect to R.C. 2151.414(D)(1), the interaction and interrelationship of the child with any person who may significantly affect the child, father testified that, when the children were first born, he changed diapers, fed them, and got up with them at night. He stated he visits the children every week and feels bonded to them. Elaine Howard, a supervisor at FCCS, testified she witnessed an argument between B.S. and father, in which B.S. began crying because father told her the foster mother was not her "mommy," which Howard thought was an inappropriate conversation, given B.S.'s age. Nevertheless, she stated the children were bonded with father and had "some" bonding with their mother. Howard testified that father regularly attends visitations, and she believed the children were happy to see their father at visitations. Howard also stated the children are bonded to each other and to the foster family. Jennifer Taylor, a caseworker for FCCS, testified that father's visits with the children have been appropriate. Taylor stated the children were comfortable with their foster family, and they are thriving in the home. The children's current foster parent testified that the children have lived in her home since October 22, 2004. She stated the children are doing very well at her home, and she would adopt them if PCC were granted.
 {¶ 13} With regard to R.C. 2151.414(D)(2), the children were too young to express their wishes. However, the GAL did recommend that it would be in the best interest of the children to be permanently placed in the custody of FCCS and to be adopted. The children's mother also supported PCC and expressed her desire for the children to be adopted by their foster mother. *Page 8 
 {¶ 14} As to R.C. 2151.414(D)(3), the custodial history of the children, the children were in the custody of father for only four to five months about two years prior to the trial date, and they have been in the care of FCCS and the same foster family since October 2004. The foster parent indicated that she would like to adopt the children.
 {¶ 15} The factor in R.C. 2151.414(D)(4) involves whether the children need a legally secure permanent placement and whether such can be achieved without a grant of permanent custody to the agency. Howard testified the children are doing well in foster care, and they need permanency. She believed the children were in need of a legally secure placement, and it would be in their best interest for FCCS to have custody so they could be adopted. The foster mother wishes to adopt the children, and she is able to meet T.S.'s special needs. Howard was not sure if father could meet those needs. As mentioned above, the children's mother told Howard that she would prefer the children be adopted by the foster mother. Taylor likewise testified that the children were thriving in the foster home. She opined the best outcome for the case was to have PCC granted to FCCS so the children could be adopted by the foster family. The GAL also recommended that PCC be granted, as it was in the best interest of the children to achieve permanency and stability.
 {¶ 16} The foster mother testified the children are doing very well at her home. She testified the children need a parent who is calm, patient, and stable. If PCC were granted, she would adopt the children. She stated that mother has expressed to her that she is thankful for her taking care of the children and giving them a safe environment. She stated that father has never asked her about T.S.'s special needs or asked to participate *Page 9 
in any therapy sessions. When she mailed a book on sign language to father, he sent it back.
 {¶ 17} There was no evidence presented that there were other suitable options for the children outside of PCC with FCCS.
 {¶ 18} Much of the testimony centered on father's commitment to regaining custody of his children through his completion of the case plan objectives. Father claims he substantially complied with the case plan, while FCCS representatives testified that he only partially complied. Father testified he knew that, in order to have the children returned, he needed to complete the case plan. Father stated that he thought he had completed the case plan, but then right before trial, he was told he still had other objectives to complete. He denied that he had been referred to outpatient individual counseling by the psychologist and admitted he would not go to it now if he were referred. He admitted his residence on the first day of trial was not appropriate for the children. Despite that he signed a lease for a larger apartment the day before the second day of trial, he admitted he had not contacted FCCS to do a home study of the new apartment so that such could be considered at trial. He claimed FCCS was making him repeat everything on his case plan, even though he had completed it once.
 {¶ 19} Howard testified father completed domestic violence counseling and a drug and alcohol assessment. However, after the counseling, there was another instance of domestic violence. Although a psychological assessment recommended that father continue individual domestic violence and anger management counseling, he did not. Howard stated that father told FCCS he would not participate in any further services, and he refused to obtain stable housing. Similarly, Taylor testified that, in order for father to *Page 10 
have been current on the case plan, he needed stable housing, individual outpatient counseling, and urine screens, all of which he failed to do. Taylor stated father never told her that he was about to sign a lease for a new, appropriate apartment. Prior to trial, he had refused to tell her his address.
 {¶ 20} As for the drug screens he was to complete for the case plan, there were some discrepancies in the testimony. Father admitted that he had refused to complete drug screens for at least a year; however, he stated the drug screens he did take were all negative, and he had taken many screens prior to the time he stopped. However, Taylor testified that, since July 21, 2003, father had been given 116 drug screens during the case, but he completed only 12. The last drug screen he completed was in August 2005, and it had been several months prior to that date that he had completed his last screen.
 {¶ 21} With regard to R.C. 2151.414(D)(5), there was some evidence that father had been convicted of several crimes prior to the commencement of the present case. There was also evidence that father had abused alcohol, which contributed to the abusive treatment of mother in the presence of the children.
 {¶ 22} After a review of the above evidence, we agree with the trial court that it is in the best interest of the children that PCC be granted to FCCS. Although it does appear that father took some early action to complete the case plan and move toward reunification, his dedication to such dropped off substantially in the second half of FCCS's term of custody. Failure to complete significant aspects of a case plan, despite opportunities to do so, is one ground for terminating parental rights. See In re Brofford (1992), 83 Ohio App.3d 869
(non-compliance with a case plan is a ground for termination of parental rights); In re M.L.J., Franklin App. No. 04AP-152, 2004-Ohio-4358
(same). *Page 11 
Although the obtainment of stable housing was included in the case plan, father waited until the day before the final hearing day to obtain an appropriate apartment. Inability to maintain stable housing is a ground for parental termination. In re Bowers, Franklin App. No. 02AP-347, 2002-Ohio-5084, at ¶ 85 (despite the obvious needs of the children, parents failed to maintain adequate housing and demonstrated a lack of commitment to the children). FCCS representatives testified that father was reminded numerous times over the past two years about his housing situation, and he continually gave reasons why he could not obtain suitable housing at that time.
 {¶ 23} Father's abysmal drug screen record also demonstrates his lack of commitment to reunification. There was evidence he completed only ten percent of the drug screens, and he lacked any reasonable excuse as to why he refused to continue providing them. The only reason he ceased the drug screens that can be gleaned from his testimony is that none of his completed screens had been positive, so he saw no reason to continue them. This reason is insufficient. Additionally, although a psychological assessment recommended that father continue individual domestic violence and anger management counseling, he did not. In sum, from his own testimony at trial, father seems to have become his own worst enemy through stubbornness, flatly telling the FCCS representatives that he would no longer participate in any further services offered.
 {¶ 24} Making this case somewhat difficult is that it was undisputed that father continuously and regularly visited the children, and there was evidence that he shares some bond with them. However, while his visitations are commendable and do demonstrate a willingness to be a part of his daughters' lives, his other actions have made it impossible for him to be considered for any permanent reunification. His unilateral *Page 12 
decision to cease partaking of any services offered by FCCS fails to convince this court that father has the necessary desire to achieve the important goals in the case plan. The objectives in the plan are not mere procedural hoops through which he is to jump; rather, they are goals that are necessary for him to be a responsible and nurturing parent. The services offered by FCCS through various educational and health providers are designed to improve a parent's ability to provide for their child. Father was given a reasonable period of time in which to demonstrate his willingness to complete these services, which would improve his parenting abilities, but he failed to do so. For these reasons, we find there was clear and convincing evidence that PCC was in the best interest of the children. The trial court's decisions granting PCC to FCCS were not against the manifest weight of the evidence. Therefore, father's assignment of error is overruled.
 {¶ 25} Accordingly, father's single assignment of error is overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.
Judgments affirmed.
 FRENCH and McGRATH, JJ., concur. *Page 1