OPINION
{¶ 1} J.S. ("father"), appellant, appeals the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motions of Franklin County Children Services ("FCCS"), appellee, for *Page 2 
permanent court commitment ("PCC"). The guardian ad litem ("GAL") has also filed an appellate brief.
 {¶ 2} N.W., who was born July 28, 2004, and U.W., who was born December 20, 2005, are the children of father and D.W., their mother ("mother"). In October 2004, pursuant to a neglect and dependency complaint, FCCS removed N.W. from her mother's home and placed her with father until February 2005, at which time he was incarcerated. U.W. was placed in the custody of FCCS immediately after her birth in December 2005. N.W. has a brain abnormality for which she receives ongoing medical treatment and observation, and U.W. has developmental delays. On January 5, 2005, the trial court found N.W. to be neglected and dependent. On May 27, 2005, the trial court granted temporary custody of N.W. to FCCS. On May 3, 2006, the trial court found U.W. to be dependent and placed her in the temporary custody of FCCS on June 14, 2006.
 {¶ 3} On August 14, 2006, FCCS filed motions for PCC with regard to each child, alleging father had failed to utilize resources made available to him in order to reunify; failed to complete a psychological evaluation; failed to provide drug screens; failed to establish paternity; failed to obtain adequate housing and employment; and failed to maintain regular visitation. L.W., the maternal grandmother of the children, filed a motion for custody and was added as a party to the actions.
 {¶ 4} A trial before a judge took place on various dates in March and June 2007. Father appeared, represented by counsel. Mother appeared for the latter part of the proceedings, represented by counsel. Father was incarcerated during the earlier proceedings, but had been released by the later hearing dates. On June 26, 2007, the trial court granted FCCS's motions for PCC. Father appeals the judgments, asserting the following assignments of error in this consolidated appeal: *Page 3 
 [I.] The Juvenile Court erred in making inconsistent findings regarding the factors under R.C. 2151.414(B)(1).
 [II.] The trial court erred in finding that an award of permanent custody was in the best interests of the children, pursuant to R.C. 2151.414(D).
 [III.] The Juvenile Court erred in finding that the children cannot be placed with Appellant within a reasonable time or should not be placed with him.
 [IV.] Ohio Revised Code 2151.414(B)(1)(d) is unconstitutional under the due process clauses of the state and federal constitutions as it creates an irrebuttable presumption of parental unfitness.
 {¶ 5} We address father's first and third assignments of error together, as they are related. Father argues in his first assignment of error that the trial court erred when it made inconsistent findings regarding the factors under R.C. 2151.414(B)(1). Father argues in his third assignment of error that the trial court erred when it found that the children could not be placed with him within a reasonable time or should not be placed with him.
 {¶ 6} A trial court's determination in a PCC case will not be reversed on appeal unless it is against the manifest weight of the evidence.In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312. Judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, paragraph one of the syllabus.
 {¶ 7} A decision to award permanent custody requires the trial court to take a two-step approach. First, pursuant to R.C. 2151.414(B)(1), a trial court must find whether any of the following apply: *Page 4 
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 8} Once the trial court finds that one of the circumstances in R.C.2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). FCCS must prove by clear and convincing evidence that an award of permanent custody is in the child's best interest. Id. Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt. Id.
 {¶ 9} With regard to the first step of the PCC analysis, the trial court found that the circumstances under R.C. 2151.414(B)(1)(a), (b), and (d) applied to N.W., and the circumstances under R.C.2151.414(B)(1)(a) and (b) applied to U.W. Father argues that these findings are inconsistent with each other, and the trial court erred by finding multiple circumstances applied to each child. We agree that several of the findings under R.C. 2151.414(B)(1) are mutually exclusive. However, after reviewing the trial court's decision, *Page 5 
we find the trial court was stating these findings in the alternative. Even though R.C. 2151.414(B)(1) requires the existence of only one of the circumstances in R.C. 2151.414(B)(1), a trial court may cite more than one factor in the alternative. See, e.g., In re D.P., Franklin App. No. 06AP-780, 2007-Ohio-1703, at ¶ 6. However, we would caution the trial court in the present case, in the future, to explicitly state that the multiple findings are in the alternative or state only a single finding. Therefore, we find the trial court's judgment was not inconsistent in this respect, and father's first assignment of error must be overruled.
 {¶ 10} Because N.W. had been in the custody of FCCS for 12 months or more of a consecutive 22-month period prior to the hearing, R.C.2151.414(B)(1)(d) has been satisfied with respect to N.W. The time requirements under R.C. 2151.414(B)(1)(d) having been satisfied, it was unnecessary for the trial court to determine whether N.W. could or should be placed with either parent within a reasonable time under R.C.2151.414(B)(1)(a). See In re S.M., Franklin App. No. 05AP-1262,2006-Ohio-2529, at ¶ 12 (findings made under R.C. 2151.414[B][1][a] and [d] are in the alternative; either will independently support a grant of permanent custody), citing In re Sunderman, Stark App. No. 2004CA00093,2004-Ohio-4608, at ¶ 48. Further, although the same rationale applies to render unnecessary any abandonment finding under R.C. 2151.414(B)(1)(b), we note that we do not believe the record supports an abandonment finding. Regardless, as R.C. 2151.414(B)(1)(d) has been satisfied with respect to N.W., father's third assignment of error is overruled insofar as N.W. is concerned.
 {¶ 11} With regard to U.W., the trial court found R.C.2151.414(B)(1)(a) and (b) could apply. As mentioned above, we need only find one of these apply to satisfy R.C. 2151.414(B)(1), and we do not believe the evidence supports an abandonment finding *Page 6 
under subsection (B)(1)(b). As to R.C. 2151.414(B)(1)(a), that finding concerns whether the child can be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C. 2151.414(E) provides a non-exhaustive list of factors for a court to consider in determining whether a child cannot or should not be placed with either parent. The statute provides that, if a court determines that any one of the factors apply, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. One of the factors cited by the trial court was R.C. 2151.414(E)(1). Pursuant to R.C. 2151.414(E)(1), a child cannot be placed with either parent or should not be placed with either parent when, notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court must consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. R.C. 2151.414(E)(1).
 {¶ 12} In the present case, there was substantial evidence that FCCS engaged in reasonable case planning and diligent efforts to assist the parents to remedy the problems that initially caused the children to be placed outside the home. Leora Whalen, a caseworker with FCCS, testified she prepared a case plan for mother and father. Whalen gave father a list of employers who hired people with criminal records, and she tried to aid him in finding housing. FCCS also provided father with bus passes for *Page 7 
visitations and his drug screens. Whalen further testified that FCCS completed home studies for potential custodial arrangements for the children or attempted to initiate such with several relatives. Whalen also completed home visits to check father's living arrangements and communicated with the children's maternal grandmother regarding visitation. Additionally, FCCS provided father a list of referrals for drug and alcohol treatment.
 {¶ 13} However, despite these diligent efforts by FCCS, father and mother failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. It is apparent from the testimony that mother and father both took some steps toward being reunited with their children, with the father evincing a greater effort to regain custody of the children. As father is the only party in this appeal, we will focus our analysis on him, although we find the evidence also supports a finding that mother failed to remedy the conditions causing the children to be placed outside the home. The three main issues disputed at trial were father's lack of employment, his lack of stable housing, and his drug use. Most of the evidence on these issues came from the testimony of Whalen, father, and father's girlfriend.
 {¶ 14} As to father's employment, father initially testified that, upon release from prison, he had a job waiting for him at a nursing facility as a dietary aide. His prior job had entailed earning money "under the table" for a family friend in a banquet hall. He stated he applied for several jobs prior to the latest hearings and searched for jobs every day. Despite his lack of employment, father stated he had the financial and emotional support of his family. Whalen testified that she believed father worked in February 2005 in health care services, but he provided her no verification, and she was never informed he worked at a banquet job. Whalen stated father was also signed on with a temporary work agency *Page 8 
as of the latter hearing dates, but had not performed any work. Whalen testified that father had never verified any stable employment during the entire pendency of the case. Stephanie McMannis, father's probation officer, likewise testified father never verified employment with her. Thus, Whalen concluded that father failed to comply with the objective of maintaining employment.
 {¶ 15} With regard to housing, father admitted he did not have stable housing and was still looking for housing. Father stated that none of the places in which he has lived for the past three years have been in his name. Father was living with his girlfriend in a "temporary" housing situation with her mother as of the latter hearing dates because their other residence was in a dangerous neighborhood. M.B., father's girlfriend, testified she and father were currently living at her mother's residence, which has two bedrooms. If she and father received custody, they would allow the children to sleep in one bedroom, and they would sleep on an air mattress. M.B. also believed she could get into subsidized housing if she and father received custody. Whalen testified that father lacked stable housing, and he failed to report his living arrangements at times during the pendency of the case. Whalen stated father never verified any stable housing with FCCS. Thus, Whalen did not believe that father complied with the objective of maintaining housing.
 {¶ 16} With regard to father's drug use, father testified that he completed a drug and alcohol assessment in jail. He admitted he had not completed weekly drug screens, but stated he could not because he was either in jail or was out looking for work. He admitted he still had "on and off" drug use problems, and he twice tested positive for marijuana in the prior two years. He also admitted he did not complete his drug treatment after being released from jail. While on probation, he tested positive for drugs two out of three screens. Whalen testified father satisfactorily complied with the objective to undergo *Page 9 
a drug and alcohol assessment; however, father did not comply with the objective of following through with the drug and alcohol recommendations. She stated that she personally requested 35 drug screens from father but received results for only two. Father told her he did not complete the drug screens because he was completing screens for his probation officer and he was out looking for jobs. Whalen stated that, although father had somewhat started working on his case plan objectives again since being released from jail the last time, he had still failed to seek drug treatment, despite the fact that she had given father a list of referrals for treatment. Whalen stated father had completed seven of eight drug screens since the last hearing and none were positive.
 {¶ 17} The record before us presents a difficult case. It is apparent that father has taken some actions to remedy the problems that initially caused the children to be placed under the care of FCCS. Father has been sporadically employed and has undergone a drug and alcohol evaluation. However, it is inescapable that father has failed to fully remedy the three main problems outlined above. Father still lacks sufficient housing. Although father's girlfriend presented a scenario in which the children could live in their current residence, and a home study was at least initiated, the record is unclear as to whether such was approved. Father also told Whalen that his current living arrangements were only temporary and did not explain where the children would reside if he were to receive custody. It is also clear that father has failed to undergo drug treatment. Although it is admirable that father has completed nearly all of his drug screens, and they have been "clean," since his latest release from jail, his history of drug use and failure to obtain treatment is troubling. Father admitted at the commencement of the hearings that he continued to be "on and off" of drugs. Most discouraging is that father was aware that the plan required him to follow the recommendations for drug treatment in order to be *Page 10 
reunited with his children, and he has failed to do such. In addition, father's lack of stable employment puts his children at great risk if he were to be reunited with them. Father's employment history is intermittent at best. Although much of father's housing and employment instability may be traced to his imprisonment for significant periods during the pendency of this case, father's imprisonment resulted from his voluntary actions and cannot excuse these failures. Given these circumstances, we cannot disagree with the conclusion of the trial court that father has continuously failed to remedy the conditions that caused the placement of the children with FCCS. Therefore, R.C. 2151.414(E)(1), and, thus, R.C. 2151.414(B)(1)(a), were satisfied with respect to U.W, and father's third assignment of error must be overruled.
 {¶ 18} Given at least one of the factors under R.C. 2151.414(B)(1) has been satisfied with respect to each of father's children, we must now address father's second assignment of error that the trial court erred when it found that an award of permanent custody was in the best interest of the children pursuant to R.C. 2151.414(D). R.C. 2151.414(D) provides that, in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's GAL, with due regard for the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved *Page 11 
without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The factors set forth in R.C.2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.
 {¶ 19} Father's argument under his second assignment of error focuses solely on the bond that he has with his children, as relevant under R.C.2151.414(D)(1), and he does not specifically address any of the other best interest factors under R.C. 2151.414(D). Father contends that the trial court did not give proper weight to the close bond that he established with his children. However, we initially note that no single best interest factor is controlling. In re C.W., Medina App. No. 06CA0033-M, 2006-Ohio-5635, at ¶ 14. Rather, the best interest test is a balancing test. Id. Thus, we must view the factor under R.C.2151.414(D)(1) in light of the remaining factors.
 {¶ 20} With respect to R.C. 2151.414(D)(1), the interaction and interrelationship of the child with any person who may significantly affect the child, father testified that his visitations were originally scheduled for one hour but then increased to two hours per week. He stated when he last visited N.W., she cried when he had to leave, and she wanted to leave with him. Father also stated that, while at visits, he changes diapers, feeds the children, hugs them, and disciplines them when necessary. He stated he understands the children's medical and developmental programs, and he would be able to continue the children in those programs. He stated he has a strong bond with his *Page 12 
children. McMannis, father's probation officer, testified that, in conversations with father about granting him permission to visit his children, McMannis saw father had genuine concern for his children.
 {¶ 21} Whalen testified that, from September 13, 2005 to March 7, 2006, father completed only 14 weekly visits, but, during his incarceration from March 7, 2006 to September 11, 2006, father attended all of the weekly visitations once the facility permitted him to do so. Whalen stated that, from September 11, 2006 to February 6, 2007, father did not visit consistently. However, Whalen testified that father was attentive to the children's needs during visits, N.W. recognized him as her father, and father attended N.W.'s surgeries. She called father's visitations fairly consistent, in that he would sometimes appear one to two times per month and other times appear for all four visitations. She stated father is bonded with the children. She had "no doubt" that father loves and cares for the children. Lachelle Hairston, a social service aid for FCCS, also testified father interacts well with the children. Father is able to calm N.W. when she has a tantrum, and N.W. knows father and hugs and kisses him. Hairston called father's visitation "consistent."
 {¶ 22} Whalen further testified mother was offered 109 visits with the children and made 38 of them. She stated FCCS had to tell mother how to act at visitations sometimes. Mother would interact with the children, but she would not change their diapers and she would give them candy, which was inappropriate for their age. Mother stopped visiting the children on November 16, 2006, and told Whalen she did not object to the children being taken. When mother visited the children in May 2007, at which time it had been six months since her last visitation, N.W. indicated that she did not remember her mother. Mother was also unable to control both children. Mother failed to appear at *Page 13 
the visitation on May 30, 2007, claiming she had a job interview and did not have transportation, despite that she had been given a bus token at the prior visit. Whalen concluded there was "little" bonding between mother and the children. However, mother testified she had stopped visiting her children because she was tired of FCCS believing she was not a good parent, but she started going to visitations again recently. Hairston opined the children were bonded with mother.
 {¶ 23} Whalen testified father's sisters, who at one time requested custody of the children, had a limited relationship with the children. The maternal grandmother, L.W., visited the children only six times. Further, although Whalen told the maternal grandmother about available visitations, between the hearing dates, she attended none. L.W. testified she did not attend all the visitations with the children because it upset her to leave them. She had only seen the children once in the prior six months. Whalen stated father's girlfriend has had little contact with the children. However, Hairston stated father's girlfriend was "good" with the children, although the children did not recognize her.
 {¶ 24} The children have been with the same foster family during their term of custody. Whalen stated the foster family is very nurturing, and it is a comfortable environment. The children depend upon the foster family for assistance. There are four other children in the foster home, and the foster family may adopt the children. After visits, the children want to be with their foster mother. C.Q., the children's foster mother, testified the children show affection toward her and are bonded to her and C.Q.'s daughter. C.Q. stated she was willing to adopt the children. Father also admitted there was a bond between the children and the foster mother. *Page 14 
 {¶ 25} With regard to R.C. 2151.414(D)(2), the children were too young to express their wishes. However, the GAL did recommend that it would be in the best interest of the children to be permanently placed in the custody of FCCS and to be adopted.
 {¶ 26} As to R.C. 2151.414(D)(3), the custodial history of the children, N.W. was removed from her mother's home by FCCS and lived with father from October 2004 until February 28, 2005, at which time father was incarcerated. U.W. has been in the custody of FCCS since her release from the hospital after her birth in December 2005. N.W. has been under the care of the foster family since February 28, 2005, and U.W. was placed with the foster family on December 22, 2005.
 {¶ 27} The factor under R.C. 2151.414(D)(4) involves whether the children need a legally secure permanent placement and whether such can be achieved without a grant of permanent custody to the agency. Much of the testimony centered on father's commitment to regaining custody of his children through his completion of the case plan objectives. Father claims he substantially complied with the case plan, while FCCS representatives testified that he only partially complied. Father has been incarcerated repeatedly during the pendency of this case, approximately half of the time. Although N.W. was in his care for several months after FCCS took custody of her, father had to relinquish care because he was incarcerated. Father also went to jail for a vehicle offense a few weeks after N.W. was born. Further, part of father's imprisonment time resulted from a violation of his probation terms. The case plan also called for him to resolve his criminal charges and abide by his disposition, but his parole violation and failure to pay his fines conflicted with this goal.
 {¶ 28} It is undisputed that father completed parenting classes, a drug and alcohol assessment, a domestic violence assessment, and anger management classes, as *Page 15 
required by the case plan. However, father admitted he still had "on and off" drug use problems, twice tested positive for marijuana, and did not complete his drug treatment. During his probation, he tested positive for marijuana two out of three drug screens. Father's failure to stay out of prison and his drug use demonstrate his unwillingness to change his voluntary activities in order to gain custody. His lack of income, employment, and housing, as outlined earlier, also demonstrate his unwillingness to take the necessary actions to be reunited with his children.
 {¶ 29} There was also evidence presented that there was no suitable caregiver that could take custody of the children. Father told Whalen that his two sisters were willing to take custody of the children; however, no home studies were completed on them. The sisters failed to be fingerprinted, and they had a limited relationship with the children. A home study was completed for mother's mom, who was not approved because the home was too small and she was on felony drug probation for cocaine possession. The maternal grandmother also demonstrated indifference through her failure to regularly attend visitations, having seen the children only once in the six months prior to trial. Father's girlfriend had also recently started a home study, but she had little prior contact with the children, thereby making a disposition of custody to her difficult.
 {¶ 30} Mother is also not a suitable caregiver for the children. Mother did not appear at the early hearing dates and later told Whalen that she did not appear because she wanted father to have custody of the children. Mother has gone long periods without any visitation with the children, and there is little bonding between them. Although she testified during the later portions of trial that she believed she could care for the children, her claims are dubious, given her history. Mother's apparent lack of interest in her *Page 16 
children and her failure to assign as error the trial court's current judgment are indicative of her indifference to the custody of the children.
 {¶ 31} C.Q., the children's foster mother, testified she is willing to adopt the children, and she would allow the parents to visit the children. She also stated she would have adequate income and space to care for the children.
 {¶ 32} Whalen concluded that neither parent was able to care for the children. She recommended that the children be placed in a safe, stable, and permanent living environment, and PCC would be in the children's best interest.
 {¶ 33} With regard to R.C. 2151.414(D)(5), there was evidence that father had abused drugs and been convicted of several crimes. Father was incarcerated at the time of the initial hearing, since February 6, 2007, for a burglary probation violation, but had been released by the later hearing dates. His burglary conviction was based upon his forcible intrusion into the home of mother and her mother. He went to jail for the burglary from May 2005 to September 2005. Father also went to jail for a vehicle offense a few weeks after N.W. was born and was not released until September 2004.
 {¶ 34} After a review of the above evidence, we agree with the trial court that it is in the best interest of the children that PCC be granted to FCCS. Although it is indisputable that father took some action to complete the case plan and move toward reunification, his efforts were lacking in several areas key to demonstrating he can properly care for his children. He failed to complete three important goals of his case plan: maintain employment; maintain adequate housing; and treat his drug usage. Failure to complete significant aspects of a case plan, despite opportunities to do so, is one ground for terminating parental rights. See In re Brofford (1992), 83 Ohio App.3d 869
(non-compliance with a case plan is a ground for termination of parental rights); In re M.L.J., *Page 17 
Franklin App. No. 04AP-152, 2004-Ohio-4358 (same). Inability to maintain stable housing is also a ground for parental termination. In reBowers, Franklin App. No. 02AP-347, 2002-Ohio-5084, at ¶ 85 (despite the obvious needs of the children, parents failed to maintain adequate housing and demonstrated a lack of commitment to the children). Further, failure to complete drug screens and drug treatment demonstrates a lack of commitment to reunification. See In re T.S., Franklin App. No. 07AP-624, 2007-Ohio-6645, at ¶ 23.
 {¶ 35} However, what makes the present case difficult is father's obvious concern for his children, as evinced by his consistent visitation, interaction, and bonding with his children. Every witness who testified indicated that father visited the children consistently and shared a bond with them. Father asserts under the present assignment of error that this bonding is sufficient to find PCC is not in the best interest of the children. However, we cannot view father's commitment to visit his children for two hours per week without looking at his actions and the circumstances that have existed throughout the pendency of the case. Father was given a case plan at the beginning of the proceedings, and father has undertaken voluntary actions and inactions inconsistent with his fulfillment of the case plan objectives. We echo our sentiments in a similar case recently decided by this court:
 * * * However, while his visitations are commendable and do demonstrate a willingness to be a part of his daughters' lives, his other actions have made it impossible for him to be considered for any permanent reunification. * * * The objectives in the plan are not mere procedural hoops through which he is to jump; rather, they are goals that are necessary for him to be a responsible and nurturing parent. * * *
In re T.S., supra, at ¶ 24.
 {¶ 36} Father's present objectives of achieving stable housing and employment are not insignificant. They are core foundations for providing a secure environment to *Page 18 
allow children to grow and prosper. Without evidence that father is capable of providing a stable, secure environment for his children, and faced with clear and convincing evidence that PCC is in their best interest, we affirm the granting of PCC to FCCS. Therefore, father's second assignment of error is overruled.
 {¶ 37} Father argues in his fourth assignment of error that R.C.2151.414(B)(1)(d) is unconstitutional under the due process clauses of the state and federal constitutions as it creates an irrebuttable presumption of parental unfitness. Father maintains that the court was able to bypass an express finding of parental unfitness because one of the children had been in the custody of a public agency for 12 months of a continuous 22-month period. However, father failed to raise this argument in the court below. The failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure and, therefore, need not be heard for the first time on appeal.State v. Awan (1986), 22 Ohio St.3d 120, syllabus. This court has specifically applied this waiver doctrine to the same argument raised here by father. See, e.g., In re Andy-Jones, at ¶ 20.
 {¶ 38} Notwithstanding waiver, this court has previously addressed father's assertion that R.C. 2151.414(B)(1)(d) is unconstitutional in that it creates an irrebuttable presumption of parental unfitness. On each occasion, our review found the argument advanced by father to lack merit. See In re V.M., Franklin App. No. 06AP-144, 2006-Ohio-4461, affirmed, 113 Ohio St.3d 161, 2007-Ohio-1254, citing In re S.W., Franklin App. No. 05AP-1368, 2006-Ohio-2958, at ¶ 11; In re J.S., Franklin App. No. 05AP-615, 2006-Ohio-702, at ¶ 11; In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 11-12; In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435, at ¶ 12-13; In re Brooks, Franklin *Page 19 
App. No. 04AP-164, 2004-Ohio-3887. For these reasons, father's fourth assignment of error is overruled.
 {¶ 39} Accordingly, father's first, second, third, and fourth assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.
Judgments affirmed.
BRYANT and KLATT, JJ., concur. *Page 1