[Cite as *M.S.K. v. C.K.*, 2016-Ohio-5046.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [M.S.K.] et al., | : | |
| Plaintiffs-Appellees, | : | No. 16AP-97 |
| | | (C.P.C. No. 14JU-9617) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [C.K.] et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on July 21, 2016

**On brief:** *Jeffrey S. Anderson*, for appellees.

**On brief:** *Joseph F. Reinier*, for appellant C.K.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, C.K., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, awarding legal custody of her minor son, W.K., Jr., to plaintiffs-appellees, M.S.K. and K.K., the child's paternal grandparents. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} C.K. ("mother") and W.K., Sr. ("father") married in January 2010. They are the parents of W.K., Jr., born December 12, 2011. Mother has two daughters from previous relationships. Her daughters, born in January 2004 and October 2006, are not subject to the custody award in this case. Before mother and father married, mother lived on Burgess Avenue. Between 2010 and 2013, mother and father lived together at multiple residences on East Morrill Avenue, Derrer Court, and finally Nationwide Boulevard. In

April 2013, father moved out of the Nationwide Boulevard residence, but they remain married. Sometime after mother and father separated, mother moved to a residence on South Hague Avenue.

{¶ 3} In April 2013, M.S.K., W.K., Jr.'s paternal grandmother, filed a complaint for custody of the child. In May 2013, the parties entered an agreed interim magistrate's order granting temporary custody of W.K., Jr. to M.S.K. In July 2014, M.S.K. voluntarily dismissed and refiled the complaint for custody. The day after M.S.K. refiled the complaint, the parties entered an agreed interim magistrate's order keeping M.S.K. as temporary legal custodian of W.K., Jr. The matter proceeded to trial before a magistrate in June 2015. Before trial, M.S.K. moved to add K.K., her husband and W.K., Jr.'s paternal grandfather, as a party. The motion to add a party was granted by stipulation. At trial, the magistrate heard testimony from mother, father, M.S.K., K.K., K.K.'s brother and sister, mother's roommate, and the guardian ad litem ("GAL"). The central focus of the testimony concerned the living conditions at mother's residences.[1]

{¶ 4} In July 2015, the magistrate recommended that the court award legal custody of W.K., Jr. to M.S.K. and K.K. The magistrate concluded that mother and father are currently unsuitable parents of W.K., Jr. and that it is in the child's best interest for M.S.K. and K.K. to be awarded legal custody. In August 2015, mother filed objections to the magistrate's decision. In January 2016, the trial court overruled those objections. Because the trial court agreed with the magistrate regarding mother and father's unsuitability and W.K., Jr.'s best interest as it relates to his custody, the trial court awarded legal custody of the child to M.S.K. and K.K.

{¶ 5} Mother timely appeals.

## II. Assignments of Error

{¶ 6} Mother assigns the following errors for our review:

> [1.] The trial court abused its discretion by ruling that the appellant is an unsuitable parent based solely upon the finding that the history of appellant maintaining an unclean

---

[1] Father conceded he is currently an unsuitable parent, and he did not oppose his parents' request for legal custody of W.K., Jr.

home was a detriment to the child where the trial court did not sufficiently specify the detriment to the child.

[2.] The trial court failed to consider evidence that mitigated a finding that appellant is an unsuitable parent.

## III. Discussion

{¶ 7}  Because they are interrelated, we address mother's two assignments of error together.  In her first assignment of error, mother asserts the trial court erred in naming M.S.K. and K.K. legal custodians of W.K., Jr. because the trial court's unsuitability finding failed to sufficiently link mother's parenting to any detriment to the child.  Mother's second assignment of error alleges the trial court erred in failing to consider evidence demonstrating she is a suitable parent.  Mother's assignments of error lack merit.

{¶ 8}  Parents have a constitutionally protected fundamental interest in the care, custody, and management of their children.  *Troxel v. Granville*, 530 U.S. 57 (2000).  The right to raise one's children is an "essential" and "basic civil right."  *In re Murray*, 52 Ohio St.3d 155, 157 (1990).  Parental rights, however, are not absolute.  *In re B.L.*, 10th Dist. No. 04AP-1108, 2005-Ohio-1151, ¶ 7.  A court may award legal custody to a nonparent if the court finds the parents unsuitable.  *In re L.M.*, 2d Dist. No. 2010-CA-76, 2011-Ohio-3285, ¶ 18.  A finding of parental unsuitability is appropriate when a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.  *In re Perales*, 52 Ohio St.2d 89 (1977), syllabus.  "If a trial court's 'unsuitability' finding is based on detriment to the child, the court must measure suitability in terms of the harmful effect on the child, not in terms of society's judgment of the parent."  *In re Z.A.P.*, 177 Ohio App.3d 217, 2008-Ohio-3701, ¶ 19 (4th Dist.); *In re Perales* at 98.  Upon finding the parents unsuitable, the trial court must then determine the child's custody based on his or her best interest.  *In re C.Y.*, 5th Dist. No. 14-CA-7, 2014-Ohio-4142, ¶ 27.

{¶ 9}  "A trial court has broad discretion in proceedings involving the care and custody of children."  *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 14.  Thus, we will not reverse a trial court's award of legal custody absent an abuse of discretion.  *In re*

*D.H.*, 10th Dist. No. 11AP-761, 2012-Ohio-2272, ¶ 9, citing *In re Gales*, 10th Dist. No. 03AP-445, 2003-Ohio-6309, ¶ 12-13.  Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 10} Here, the trial court granted legal custody of W.K., Jr. to M.S.K. and K.K. The court determined that placing W.K., Jr. in mother's custody would be detrimental to him, particularly noting mother's inability to consistently provide a sanitary residence. The court described mother's pattern of living in "squalor" and expressed its finding that W.K., Jr. is unable to "self-protect from reoccurring hazards at [mother's] residence, such as animal feces indoors, and insect infestations."  (Jan. 7, 2016 Decision & Entry at 8.) While acknowledging that mother's living conditions were improved at the time of the June 2015 trial, the trial court determined that mother was unable to maintain those conditions.

{¶ 11} Mother argues that the trial court abused its discretion when it failed to acknowledge that she broke the pattern of unclean residences by the time of trial. According to mother, she has taken responsibility for maintaining her residence, as demonstrated by her improved living conditions.  Additionally, mother argues that the trial court failed to causally connect the conditions of her residence with potential harm to W.K., Jr.  Lastly, mother contends that the trial court failed to consider her ability to supervise and care for W.K., Jr. and his sisters as a fact weighing against any detrimental effects of the conditions of her residence.  These arguments are unpersuasive.

{¶ 12} Evidence at trial supported the trial court's determination that mother is currently unsuitable to be the legal custodian of W.K., Jr.  The GAL's testimony and reports outlined the conditions of mother's residences during the past few years.  The GAL generally testified that mother was unable to consistently provide a safe and sanitary residence.  She testified that her visits to mother's residences revealed varying degrees of conditions, but she never found it to be acceptable for a child who is unable to self-protect.  The GAL's reports further detail the poor conditions at mother's residences.  The GAL reviewed the photographs that M.S.K. took of mother's Nationwide Boulevard residence in April 2013, and stated it was "impossible to describe the horrific conditions of the home in writing.  These pictures showed conditions among the wors[t], if not the

worst, I have ever seen in my 16 years of work in this area of the law."  (May 1, 2015 Report of the Guardian ad Litem at 5, hereinafter "GAL report.")  The GAL added, "The home was filled with trash, food scraps and spills, animal feces and bugs such as roaches. The conditions were clearly a health hazard for those in the home."  (GAL report at 5.) The trial court reasonably agreed with the GAL's characterization of mother's Nationwide Boulevard residence as reflected in the April 2013 photographs.  Those photographs revealed that the conditions of that residence were patently unsanitary and hazardous.

{¶ 13} The GAL's reports further indicate that she made numerous unannounced visits to mother's South Hague Avenue residence in 2014.  The conditions were reportedly better than depicted in the April 2013 photographs, but by summer 2014, "the home conditions were again in bad shape with rotting food laying around and dog feces on the floor as examples."  (GAL report at 7.)  According to the GAL, the conditions at mother's residence improved by fall 2014, but when she visited at the end of 2014, she again observed "very bad conditions."  (GAL report at 7.)  When the GAL made an unannounced visit to mother's residence in April 2015, the condition of the residence was "not good." (GAL report at 8.)  Thus, the GAL's testimony and reports indicated that mother was unable to consistently keep her home safe and sanitary.

{¶ 14} The GAL's testimony and reports were consistent with the testimony of other witnesses at trial.  Mother testified that Franklin County Children Services removed her two daughters from her home in 2009 due to sanitary and safety issues.  Mother's daughters returned to her home in 2011.  K.K.'s brother, M.K., testified that when mother and father moved from the East Morrill Avenue residence it was "in disarray, very dirty, garbage, just a lot of unsightly things just left behind."  (Tr. at 43.)  K.K.'s sister, M.M., described the conditions at the East Morrill Avenue residence as "[f]ilthy * * * It was trash, dirty dishes, clutter, gnats, just unkempt, unclean."  (Tr. at 50.)

{¶ 15} M.S.K. testified that the photographs she took of the Nationwide Boulevard residence in April 2013 accurately depict what she saw in the residence, except she noted that they did not show the cockroaches that were "crawling all over" the crib in the kitchen, or the dog feces "all through the clothing."  (Tr. at 91, 110.)  M.S.K. testified that trash was "piled up against the back door."  (Tr. at 374.)  Additionally, although M.S.K. never entered mother's Burgess Avenue residence, she recalled an incident when mother

entered that property to retrieve something and, when she returned to her car, M.S.K. observed cockroaches crawling out of her hair.

{¶ 16} At mother's current residence on South Hague Avenue, she lives with two other adults, her two daughters, six dogs, and three cats.  Mother's roommate, N.H., testified that, due to their collective efforts, the conditions at the South Hague Avenue residence improved in the month prior to trial.  N.H. described that residence as being "clean" with a "little bit of clutter."  (Tr. at 126.)  However, N.H. also testified that, only a few months before trial, the residence was "trashed."  (Tr. at 135.)

{¶ 17} Father testified to the following facts regarding mother's residences.  Father observed conditions at mother's Burgess Avenue residence as poor as those depicted in the April 2013 photographs of the Nationwide Boulevard residence.  When mother and father lived at the Derrer Court residence, and Franklin County Children Services had custody of mother's daughters, they would "rush and clean" the residence each week to make it acceptable to children services for mother's visits with the children.  (Tr. at 144.)  According to father, their residence "got bad" during those intervals, but not as bad as the Nationwide Boulevard residence in April 2013.  (Tr. at 144.)  At the Nationwide Boulevard residence, the girls slept on the floor because their beds were infested with bed bugs, and W.K., Jr. slept in the crib in the kitchen.  Father detailed other hazardous conditions at the Nationwide Boulevard residence.  When the first floor toilet clogged, they continued to use it without unclogging it.  Additionally, the furnace at that residence was broken during their entire stay, which included the winter months, and mother refused to contact the landlord regarding the furnace because of the condition of the residence.  In lieu of an operating furnace, they heated the oven in the kitchen and left its door open.

{¶ 18} Considering the evidence presented at trial, the trial court reasonably determined that mother's inability to consistently maintain a safe and sanitary home would be detrimental to W.K., Jr. because it would place him in a hazardous environment.  Therefore, the trial court's explanation for its decision sufficiently linked mother's conduct with potential harm to W.K., Jr.  Also, while the trial court specifically acknowledged the improved conditions of mother's home immediately prior to trial, it discounted the significance of that improvement based on the evidence of her history of repeated reversion to unsafe and unsanitary living.  Thus, contrary to mother's arguments, the trial

court considered the potential harmful effects on the W.K., Jr. and did not measure mother's suitability in terms of society's judgment of her. Moreover, any evidence of mother's positive parental attributes did not preclude the trial court from finding her unsuitable based on her inability to consistently provide a safe and sanitary home for W.K., Jr.

{¶ 19} Based on the foregoing, we cannot find that the trial court abused its discretion in concluding that mother and father are unsuitable to be the legal custodians of W.K., Jr. at this time. Accordingly, mother's two assignments of error are overruled.

## IV. Disposition

{¶ 20} Having overruled mother's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.

———————————