[Cite as *In re A.U.*, 2021-Ohio-2658.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| | | No. 20AP-594 |
| (A.U.), | : | (C.P.C. No. 16JU-014437) |
| (A.U., Mother, | : | (ACCELERATED CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on August 3, 2021

**On brief:** *William T. Cramer*, for appellant.

**On brief:** *Robert J. McClaren*, for Franklin County Children Services.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Appellant, A.U., mother of A.U. ("mother"), appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, terminating her parental rights and placing A.U. in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} In August 2018, FCCS filed a motion for permanent court commitment ("PCC"), also known as permanent custody, of A.U. This request was heard before the trial court in November 2020. To begin the permanent custody proceedings, the trial court conducted an in camera interview with the eight-year-old child. A.U. stated that she was living with "mama and papa" (her foster parents) and her brother, and that she wanted to

continue living with them. (Tr. at 8.) She also indicated that she had tried to call mother but mother "hasn't been answering." (Tr. at 23.)

{¶ 3} After the trial court's in camera interview with A.U., but before any witnesses testified, mother's counsel moved for a continuance based on mother's absence. Mother's counsel indicated mother was not present because she did not know about the trial date. A family friend also attempted to explain mother's absence at trial, stating she was sick. The trial court denied the continuance request.

{¶ 4} Two individuals testified at the trial, the FCCS caseworker assigned to the case, Taira Johnson, and A.U.'s guardian ad litem, Carolynn Fittro. Caseworker Johnson testified as follows. FCCS first received custody of A.U. in September 2016 when mother left A.U. with a babysitter, was arrested, and then made no arrangements for the care of A.U. FCCS continued to have custody of A.U. until the trial. Johnson had no contact with A.U.'s father, J.S., who never saw A.U. during the pendency of the case. In February 2017, a case plan was approved and adopted by the trial court that, among other things, required mother to complete an alcohol and other drug ("AOD") assessment if she failed any of the required random drug screens, an anger management assessment, a domestic violence assessment, and a mental health assessment, and to follow through with any recommendations resulting from the assessments. The case plan also required mother to maintain employment and safe housing.

{¶ 5} Johnson further testified that she had expressed concern to mother regarding domestic violence issues associated with mother's relationship with the father of A.U.'s brother, but mother continued that relationship. Additionally, mother did not follow through with the recommended treatment programs associated with the assessments she completed. Regarding her employment, mother informed Johnson that she worked at a call center and as an entertainer at an adult establishment, but mother did not produce verification of the income from that employment. Mother's housing situation was inconsistent. Since A.U. had been placed in FCCS's custody, mother had resided in approximately five different locations, none of which was her own independent housing. As to mother's visitations with A.U., Johnson estimated that mother completed only approximately one-fourth of the total visits scheduled. And there had been two periods in which mother did not visit A.U. for over 90 days. Because of mother's unreliability and

inconsistency, her eight-hour visits with A.U. were reduced to two hours.  During visits, Johnson noted that A.U. "recognize[d] her as her mother but there's not a bond."  (Tr. at 73.)  Johnson described A.U.'s bond with the foster family as strong, and she recommended the granting of FCCS's request for permanent custody.

{¶ 6}  Guardian ad litem Fittro testified that the child was "very bonded" with her brother and her foster parents, and she told Fittro "that she feels that this is her family," and "she wants to be adopted by the" foster parents.  (Tr. at 112, 116.)  Fittro considered A.U. old enough to understand the meaning of permanent custody.  Based on her evaluation of the circumstances, Fittro recommended the trial court grant FCCS's request for permanent custody of A.U. because it would be in the child's best interest.

{¶ 7}  Following the trial on FCCS's motion for permanent custody, the trial court issued a written decision granting the motion.  The trial court found, among other things, that FCCS presented clear and convincing evidence that granting the motion was in A.U.'s best interest.

{¶ 8}  Mother timely appeals.

## II.  Assignments of Error

{¶ 9}  Mother assigns the following errors for our review:

> [1.] Appellant's rights to due process under the federal and state constitutions were violated by the juvenile court's refusal to continue the permanent custody trial.
>
> [2.] The juvenile court's judgment erroneously relies on R.C. 2151.414(B)(2) to award permanent custody.
>
> [3.] The juvenile court's judgment terminating parental rights and granting permanent custody to the agency is not supported by clear and convincing evidence.

## III.  Discussion

### A.  First Assignment of Error – Denial of Continuance

{¶ 10}  Mother's first assignment of error alleges the trial court erred in denying her request to continue the permanent custody trial.  We disagree.

{¶ 11}  An appellate court will not reverse a denial of a continuance in a PCC case absent an abuse of discretion.  *In re J.B.*, 10th Dist. No. 08AP-1108, 2009-Ohio-3083, ¶ 26,

citing *In re B.G.W.*, 10th Dist. No. 08AP-181, 2008-Ohio-3693, ¶ 23. An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Further, " '[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *In re J.B.* at ¶ 26, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). In reviewing whether a trial court abused its discretion in denying a continuance, an appellate court weighs any potential prejudice to the movant against the court's right to control its docket and the public's interest in the efficient dispatch of justice. *State v. Woods*, 10th Dist. No. 09AP-667, 2010-Ohio-1586, ¶ 24; *In re M.K.*, 10th Dist. No. 09AP-1141, 2010-Ohio-2194, ¶ 14.

{¶ 12} Mother's counsel requested a continuance based on mother's absence, which was allegedly due to mother not knowing about the trial date. Also, mother's family friend stated mother was sick. But the vague assertion that mother was sick was unsubstantiated by any documentation, and there was no dispute mother was present during a virtual hearing during which the trial date for the permanent custody motion was set. Mother argues she had audio issues during that virtual hearing, suggesting she did not hear the setting of the date. She does not dispute, however, that her attorney knew the date and appeared. Consequently, it would have been reasonable for the trial court to impute that knowledge to mother. *See In re M.W.*, 10th Dist. No. 07AP-529, 2007-Ohio-6506, ¶ 89 ("trial court reasonably could have charged appellant with the knowledge of his counsel regarding the hearing date * * * when it denied his motion for a continuance"). Moreover, the matter already had been delayed numerous times, pushing it well-beyond the time frame set forth in R.C. 2151.414(A)(2), which requires, in the absence of "good cause shown," that a hearing on a permanent custody motion occur no later than 120 days after the filing of the motion. FCCS filed the permanent custody motion on August 27, 2018, and the continuance was requested on November 5, 2020. This extensive delay, coupled with no good cause shown, reasonably weighed heavily in favor of moving forward with the trial.

{¶ 13} Based on these circumstances, we cannot find the trial court abused its discretion in denying mother's continuance request. Therefore, we overrule mother's first assignment of error.

**B.  Second Assignment of Error – Reliance on R.C. 2151.414(B)(2)**

{¶ 14}  Mother's second assignment of error alleges the trial court erroneously relied on R.C. 2151.414(B)(2) in awarding permanent custody.  Mother argues this statutory provision was inapplicable because FCCS's permanent custody motion was not based on R.C. 2151.413(D)(2).  This assignment of error is not well-taken.

{¶ 15}  When a trial court makes a determination under R.C. 2151.419(A)(2), "that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home," R.C. 2151.413(D)(2) and 2151.414(B)(2) apply.  *In re S.R.T.*, 9th Dist. No. 27978, 2016-Ohio-788, ¶ 8.  R.C. 2151.413(D)(2) provides that "when a motion for reasonable efforts bypass is granted, the agency is required to file a motion for permanent custody."  *Id.* at ¶ 9.  And R.C. 2151.414(B)(2) provides that, "[w]ith respect to a motion made pursuant to" R.C. 2151.413(D)(2), the trial court "shall grant permanent custody of the child to the [agency]" if the court determines that (1) the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, in accordance with R.C. 2151.414(E) and (2) permanent custody is in the child's best interest, in accordance with R.C. 2151.414(D).  *Id.* at ¶ 9.

{¶ 16}  Here, the trial court considered and applied R.C. 2151.414(B)(2) even though it did not determine that FCCS was not required to make reasonable efforts pursuant to R.C. 2151.419(A)(2).  In the absence of a finding under R.C. 2151.419(A)(2), neither R.C. 2151.413(D)(2) nor 2151.414(B)(2) applied.  Thus, we agree with mother to the extent she asserts the trial court erred in considering and applying R.C. 2151.414(B)(2).  But despite this unnecessary analysis, the trial court separately determined that FCCS was entitled to permanent custody pursuant to R.C. 2151.414(B)(1).  That dispositive determination was supported by the weight of the evidence, as discussed below in reference to mother's third assignment of error.  Therefore, the trial court's error in considering and applying R.C. 2151.414(B)(2) to the facts of this case was harmless.

{¶ 17}  Accordingly, we overrule mother's second assignment of error.

**C. Third Assignment of Error – Manifest Weight of the Evidence**

{¶ 18} In mother's third assignment of error, she asserts the trial court's decision to grant permanent custody of A.U. to FCCS pursuant to R.C. 2151.414(B)(1) was against the manifest weight of the evidence. This assignment of error lacks merit.

{¶ 19} "In reviewing a judgment granting permanent custody to FCCS, an appellate court 'must make every reasonable presumption in favor of the judgment and the trial court's findings of facts.' " *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8, quoting *In re P.G.*, 10th Dist. No. 11AP-574, 2012-Ohio-469, ¶ 37. " '[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.' " *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). "Judgments are not against the manifest weight of the evidence when all material elements are supported by competent, credible evidence." *J.T.* at ¶ 8.

{¶ 20} "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio recognizes the essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, these rights are not absolute, and a parent's natural rights are subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child. *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA 2694, 2000 Ohio App. LEXIS 4550 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist.1994).

{¶ 21} In deciding to award permanent custody pursuant to R.C. 2151.414(B)(1), the trial court must take a two-step approach. *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 18. The court must first determine if any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* The fourth factor described in R.C. 2151.414(B)(1) is that "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-

month period." R.C. 2151.414(B)(1)(d). Here, there is no dispute that A.U. was in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period. Thus, the statutory factor in R.C. 2151.414(B)(1)(d) was established.

{¶ 22} Once the trial court determines that one of the circumstances in R.C. 2151.414(B)(1) applies, it must then determine whether "clear and convincing" evidence demonstrates that a grant of permanent custody is in the child's best interest. *In re A.J.*, 10th Dist. No. 13AP-864, 2014-Ohio-2734, ¶ 16; R.C. 2151.414(B)(1). "Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established." *K.L.* at ¶ 14. "It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt." *Id.*

{¶ 23} In determining the best interest of a child, R.C. 2151.414(D)(1) requires the trial court to consider all relevant factors including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in [R.C. 2151.414(E)(7) to (11)] apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a) through (e). R.C. 2151.414(D) does not give any one factor "greater weight than the others." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶ 24} The evidence at trial supported the trial court's determination that granting permanent custody to FCCS was in A.U.'s best interest. In evaluating this issue, R.C. 2151.414(D)(1)(a) required the trial court to consider the interactions and relationships between the child and the individuals in the child's life, including the child's parents, siblings, relatives, and "any other person who may significantly affect the child." Here, the evidence demonstrated a strong bond between A.U. and her foster parents and between A.U. and her younger brother, who also was in the custody of A.U.'s foster parents. The foster parents indicated a willingness to adopt A.U. and her younger brother. A.U. acknowledged mother as her biological mother but there was no observable bond between the two. During the visits, mother "appeared to be uncomfortable at times * * * [and] would really kind of follow [A.U.'s] lead when it comes to how the visits will go and how to care for the other child." (Tr. at 72-73.)

{¶ 25} R.C. 2151.414(D)(1)(b) required the trial court to consider the wishes of A.U., expressed either directly by the child or through the child's guardian ad litem. Before hearing testimony from witnesses, the trial court conducted an in camera interview with A.U., who expressed a desire to stay with her foster parents. The guardian ad litem also reported that A.U. indicated that she wanted to be adopted by her foster parents. Even though A.U. was young, the guardian ad litem considered A.U. cognitively mature enough to understand the concepts of permanent custody and adoption. Based on her evaluation of the circumstances, the guardian ad litem recommended the trial court grant FCCS's request for permanent custody. The trial court considered this evidence and reasonably found it to be credible.

{¶ 26} R.C. 2151.414(D)(1)(c) required the trial court to consider the custodial history of the child. For the purpose of this division, A.U. entered the temporary custody of FCCS in November 2016, and she had been in the continuous custody of FCCS since that time. *See* R.C. 2151.414(D) ("For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is

sixty days after the removal of the child from home."). Thus, at the time of trial, A.U. had been in the care of FCCS for over four years.

{¶ 27} R.C. 2151.414(D)(1)(d) addresses the child's need for legally secure permanent placement and required the trial court to consider whether this can be achieved without a grant of permanent custody to the agency. *In re D.P.*, 10th Dist. No. 06AP-780, 2007-Ohio-1703, ¶ 16. Here, the trial court concluded that a legally secure permanent placement could not be achieved without a grant of permanent custody to FCCS. The evidence supported this conclusion, as it demonstrated that mother did not follow through with services outlined in the case plan that were designed to remedy problems that led to the removal of A.U. from the home. For example, mother did not follow through with mental health treatment, did not complete domestic violence classes, and did not take an AOD assessment. Additionally, she did not remove herself from a relationship that was associated with domestic violence problems. Furthermore, FCCS had no contact with A.U.'s father, who resides in Colorado and never visited A.U., and no other relative indicated he or she could provide a permanent home for A.U. Thus, evidence supported the trial court's finding that a legally secure permanent placement cannot be achieved without a grant of permanent custody to FCCS.

{¶ 28} Lastly, under R.C. 2151.414(D)(1)(e), the trial court was required to consider any applicable factors set forth in R.C. 2151.414(E)(7) through (11). Here, the trial court found R.C. 2151.414(E)(10), the factor addressing parental abandonment, to be applicable. R.C. 2151.011(C) provides that "[f]or purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." A parent's intent is not pertinent when determining abandonment for the purpose of R.C. 2151.414(E)(10). *In re E.B.*, 10th Dist. No. 16AP-352, 2017-Ohio-2672, ¶ 44. Evidence at trial demonstrated that A.U.'s father had no contact with A.U. after FCCS took custody of her, and that there were two periods in which mother did not visit A.U. for more than 90 days. Thus, the trial court's parental abandonment finding under R.C. 2151.414(E)(10) was supported in the record.

{¶ 29} Based on our review of the record, we find that competent, credible evidence supported the trial court's conclusion that granting permanent custody to FCCS was in the

child's best interest.  Because the trial court's decision to grant permanent custody was not against the manifest weight of the evidence, we overrule mother's third assignment of error.

**IV.  Disposition**

{¶ 30} Having overruled all three of mother's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

BROWN and BEATTY BLUNT, JJ., concur.