[Cite as *In re G.M.*, 2024-Ohio-5398.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| [G.M., | : | No. 23AP-482 |
| | | (C.P.C. No. 20JU-9101) |
| K.P., Mother, | : | (REGULAR CALENDAR) |
| Appellant]. | : | |
| In the matter of: | : | |
| [G.M., | : | No. 23AP-519 |
| | | (C.P.C. No. 20JU-9101) |
| D.M., Father, | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on November 14, 2024

**On brief:** *Mitchell A. Williams*, Public Defender, and *Robert D. Essex*, for appellant K.P.

**On brief:** *William T. Cramer*, for appellant D.M.

**On brief:** *Jessica M. Ismond*, for Franklin County Children Services.

APPEALS from the Franklin County Court of Common Pleas
Division of Domestic Relations and Juvenile Branch

JAMISON, J.

{¶ 1} Appellants, K.P., mother, and D.M., father, parents of the minor child, G.M., appeal the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, granting permanent custody of G.M. to Franklin County

Children Services ("FCCS"), a public children services agency. For the reasons below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In October 2019, G.M.'s school alerted FCCS that the child needed urgent dental treatment, and FCCS began working with the family on a voluntary basis. G.M. was born in 2010, and is diagnosed with autism-spectrum disorder ("ASD") and attention-deficit/hyperactivity disorder.

{¶ 3} On August 18, 2020, K.P. and G.M. were involved in a serious car accident. K.P. sustained injuries including six broken ribs and the child suffered a broken leg. Because she could not care for G.M., K.P. voluntarily surrendered custody of G.M. to FCCS immediately after the accident, without D.M.'s knowledge.

{¶ 4} On September 17, 2020, FCCS filed a complaint alleging neglect and dependency, and received a temporary order of custody on September 18, 2020. G.M. was adjudicated dependent on February 26, 2021, and FCCS received a temporary court commitment.

{¶ 5} On August 2, 2021, FCCS filed a motion requesting permanent custody on the grounds that G.M. cannot be placed with either parent pursuant to R.C. 2151.414(B)(1)(a). On March 9, 2022, FCCS filed a second motion with the additional R.C. 2151.144(B)(1)(d) factor that G.M. had been in FCCS's custody 12 or more months of a consecutive 22-month period.

{¶ 6} The permanent custody hearing began on February 23, 2023, and was continued to April 18, 2023, and concluded on April 20, 2023. Evidence was presented regarding the parents' noncompliance with the case plan, emphasizing K.P.'s substance abuse issues and D.M.'s general noninvolvement with parenting. The agency argued that the parents have not addressed the issues in their case plans and are unfit to safely provide for G.M.

{¶ 7} K.P. acknowledged that although she did not complete several components of her case plan, she visited G.M. regularly. K.P. had been in drug treatment during the case and had suffered several relapses. D.M. suffered a debilitating stroke in 2015 that rendered him with only one functional arm and confined to a wheelchair. Due to his health

challenges, D.M. is dependent on caregivers, himself, which hampers his ability to provide care for G.M.

{¶ 8} On August 7, 2023, the trial court issued a decision granting permanent custody to FCCS.

{¶ 9} K.P. filed an appeal docketed as case No. 23AP-482, and D.M. filed an appeal docketed as case No. 23AP-519. On October 10, 2023, this court consolidated the appeals for purposes of oral argument and determination.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Appellant K.P. assigns the following as trial court errors:

[1.] The trial court committed reversible error by terminating the parent's parental rights when the decision was against the manifest weight of the evidence.

[2.] The trial court committed reversible error in failing to comply with or even consider the requirements of O.R.C. 2131.031 and 2131.032.

{¶ 11} Appellant D.M. assigns the following as trial court errors:

1. The trial court erred in granting permanent custody to FCCS based on an improper finding that the Child had been in the temporary custody of FCCS for twelve or more months of a consecutive twenty-two month period.

2. The trial court erred in granting permanent custody to the Agency because the trial court's judgment is not supported by clear and convincing evidence that the Child cannot be placed with Father within a reasonable time or should not be placed with Father.

3. The trial court erred in granting permanent custody to the Agency and terminating parental rights because the trial court's judgment is not supported by clear and convincing evidence that a grant of permanent custody to the Agency is in the best interest of the Child.

## III. STANDARD OF REVIEW

{¶ 12} It is well established that a parent's right to raise a child "is an 'essential' and 'basic civil right.' " *M.S.K. v. C.K.*, 10th Dist. No. 16AP-97, 2016-Ohio-5046, ¶ 8, quoting *In re Murray*, 52 Ohio St.3d 155, 157 (1990). The "[p]ermanent termination of parental rights has been described as the family law equivalent of the death penalty in a

criminal case." (Internal quotations and citations omitted.) *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, ¶ 14. Based upon these principles, the Supreme Court of Ohio has determined that a parent "must be afforded every procedural and substantive protection the law allows." (Internal quotation and citation omitted.) *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). A parent's rights, however, are not absolute. *In re B.L.*, 10th Dist. No. 04AP-1108, 2005-Ohio-1151.

{¶ 13} An appellate court will not reverse a trial court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228. Clear and convincing evidence is more than a mere preponderance of the evidence and must "produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established." *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 14.

{¶ 14} R.C. 2151.414(B) establishes a two-pronged analysis that the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. *In re S.T.*, 10th Dist. No. 19AP-24, 2019-Ohio-4341. A trial court must determine if: (1) the child is not abandoned or orphaned or has not been in the temporary custody of a public children services agency for 12 out of 22 months, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned and the parents cannot be located; (3) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (4) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for 12 or more months of a consecutive 22-month period. *In re A.J.*, 10th Dist. No. 13AP-864, 2014-Ohio-2734.

{¶ 15} We have noted that R.C. 2151.414(B)(1)(a) and (d) are mutually exclusive. *In re N.W.*, 10th Dist. No. 07AP-590, 2008-Ohio-297. R.C. 2151.414(B)(1)(a) applies only when the circumstances outlined in R.C. 2151.414(B)(1)(d) do not apply. *Id.*

{¶ 16} Once the trial court determines that any one of the circumstances applies, it must then establish that it is in the best interest of the child to grant permanent custody to the agency. *In re D.M.*, 1st Dist. No. C-200043, 2020-Ohio-3273. In determining the best

interest of a child, the trial court must consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any person who may significantly affect the child; (2) the wishes of the child, as expressed by the child or the child's guardian ad litem ("GAL"); (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factor listed in R.C. 2151.414(E)(7) through (11) applies in relation to the parents and child. R.C. 2151.414(D)(1). "No single factor is given greater weight or heightened significance." *In re D.M.* at ¶ 47.

{¶ 17} The trial court may terminate the rights of a parent and grant permanent custody of the child to an agency only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the four circumstances in R.C. 2151.414(B)(1)(a) through (d) is present. *In re A.W.*, 5th Dist. No. 2015CA00032, 2015-Ohio-2497.

## IV. DISCUSSION

{¶ 18} K.P.'s first assignment of error and D.M.'s second and third assignments of error are related and shall be considered together. The parties argue that the evidence does not support the granting of permanent custody. We disagree.

{¶ 19} The record contains substantial evidence that FCCS engaged in reasonable case planning and diligent efforts to assist both parents to remedy the issues that caused G.M. to be removed from the home. Case plans with the goal of reunification were prepared for the parents, and caseworkers reviewed the case plan at least monthly. Services were identified and referred, and individual goals and the steps the parents and FCCS will take to achieve reunification were established.

{¶ 20} K.P.'s case plan included having to address her substance abuse issues, maintain stable housing and income, complete a psychological evaluation, and visit G.M.

{¶ 21} K.P. was diagnosed with active severe cocaine use disorder and severe opioid use disorder, in remission. At the time of the automobile accident in August 2020, K.P. tested positive for benzodiazepine, cocaine, methadone, and fentanyl. A great deal of effort was directed at assisting K.P. with her drug use, but K.P. tested positive for cocaine

consistently for the entire duration of this matter. K.P. failed to complete many drug screens and treatment was generally unsuccessful. K.P. takes methadone daily.

{¶ 22} K.P. has not maintained employment and depends upon a portion of D.M.'s retirement as her sole source of income. K.P. has a history of missing scheduled drug screens. K.P. has a history of disappearing and has left D.M. alone overnight. She cancels appointments at the last minute.

{¶ 23} K.P. failed to correct the activities that led to removal of G.M. The trial court determined that K.P. failed to complete the essential components of her case plan, and this is an impediment to reunification.

{¶ 24} D.M.'s case plan included visiting and maintaining a relationship with G.M., follow through with medical appointments and therapeutic treatment plans, participate in linked services, and sign any required releases of information.

{¶ 25} A stroke confined D.M. to a wheelchair. The GAL observed that D.M. does not interact with G.M. at all. D.M. sits and watches from his wheelchair during visits and observes K.P. and G.M. D.M. has expressed interest in caring for G.M., himself, but the dependency upon K.P. by both may be too great. D.M. appears to be overwhelmed by parenting.

{¶ 26} D.M. refused medical assistance and refused to link with adult protective services. He did link with the Veteran's Administration ("VA") and has started physical therapy. The VA also located an apartment with handicap accommodations, and the parents now have safe housing.

{¶ 27} We note that D.M. complied with his case plan, but several items were not completed. However, substantial compliance with a case plan is not, in and of itself, "dispositive" and "does not preclude a grant of permanent custody to a social services agency." *In re J.B.*, 8th Dist. No. 98546, 2013-Ohio-1704, ¶ 90. The issue is whether parents have substantially remedied the conditions that caused the child to be removed from the home. *Id.*

{¶ 28} The GAL is worried about D.M.'s self-sufficiency and his ability to take care of G.M. If D.M. receives custody, there is concern about keeping G.M. away from K.P. D.M. has not demonstrated that he can independently parent G.M. and meet her basic needs,

and there was no indication that he would be independently able to care for himself or G.M. at any time in the foreseeable future.

{¶ 29} G.M. requires special care due to her medical needs. Neither parent has ever linked with any services geared towards autistic children. Her current school is working with her to increase her verbal and comprehension skills.

{¶ 30} The parents have secured adequate housing, and D.M. can get around and take care of the apartment.

{¶ 31} The GAL stated in her final report that K.P. was still using cocaine and D.M. had not acquired suitable parenting skills to provide for G.M. G.M. needs a parent who can provide nurturance, stimulation, and stability. The GAL recommended permanent custody to FCCS.

{¶ 32} In its judgment entry awarding permanent custody to FCCS, the trial court found by clear and convincing evidence that G.M. could not be placed with either parent within a reasonable time or should not be placed with either parent. The trial court relied upon the factors set forth under R.C. 2151.414(E)(1), (2), (4), (11), (14), and (16), and discussed the circumstances of the parents.

{¶ 33} Once a trial court determines that one of the circumstances in R.C. 2151.414(B)(1) applies, it is required to find that " 'clear and convincing' evidence demonstrates that a grant of permanent custody is in the child's best interest." *In re A.U.*, 10th Dist. No. 20AP-594, 2021-Ohio-2658, ¶ 22, quoting *In re A.J.*, 2014-Ohio-2734, at ¶ 16. The trial court considered all of the best interest factors and found that granting the motion for permanent custody was in G.M.'s best interest.

{¶ 34} The parents maintained contact with G.M. through supervised visits, and K.P. has a good bond with G.M. D.M. made it to visits but has minimal interactions with G.M., and his bond with her is reported as poor. During visits, and even with K.P., the primary activity was watching videos and listening to music. G.M. has no bond with either parent's extended family.

{¶ 35} G.M. had been in temporary custody continuously since September 2020. G.M. was 12 at the time of the hearing and has language delays, so she was not able to adequately communicate her wishes.

**{¶ 36}** G.M.'s ASD requires commitment and routine, and both are lacking with the parents. Her special needs require a legally secure placement, and permanent custody is the only option.

**{¶ 37}** Each permanent custody case involves a delicate balance between maintaining the parent-child relationship and protecting the child's best interest. Although they managed to maintain contact with G.M. through visits, there was not enough effort by the parents to eradicate the issues that led to removal, including the failure to resolve severe substance abuse issues.

**{¶ 38}** Based on a thorough review of the record, clear, competent, and credible evidence demonstrates neither parent is able to provide a safe and stable home for G.M. Under the circumstances before us, permanent custody to FCCS is in the best interest of the G.M., and the trial court's findings are not against the manifest weight of the evidence.

**{¶ 39}** K.P.'s first assignment of error and D.M.'s second and third assignments of error are overruled.

**{¶ 40}** D.M. contends in his first assignment of error that the trial court incorrectly proceeded on FCCS's second motion for permanent custody, that contained the new allegation that G.M. had been in custody for 12 months out of a consecutive 22-month period when that allegation had not been in the original motion. G.M. had not been in custody for at least 12 months at the time the first motion was filed.

**{¶ 41}** A motion for permanent custody must be based on grounds that exist as of the date of filing. *In re K.G.*, 9th Dist. No. 03CA0066, 2004-Ohio-1421, ¶ 12. FCCS initially only alleged the grounds in R.C. 2151.414(B)(1)(a), which focuses on whether a child cannot or should not be placed with either or both parents, when the child is not abandoned or orphaned and has not been in the temporary custody of an agency. *In re T.L.M.*, 11th Dist. No. 2010-P-0008, 2010-Ohio-3553.

**{¶ 42}** R.C. 2151.413 is a mandatory statute. If a child has been in its custody for 12 or more months of a consecutive 22-month period, FCCS must file a permanent custody motion pursuant to R.C. 2151.413(D)(1). *In re D.K.*, 10th Dist. No. 19AP-801, 2020-Ohio-5251. Nothing prevents an agency from filing for permanent custody on grounds other than R.C. 2151.414(B)(1)(d) before a child has been in agency custody less than 12 months. *Id.*

{¶ 43} In this case, the trial court found by clear and convincing evidence that G.M. was placed in temporary FCCS custody on September 18, 2020, and had been in the agency's continuous custody for 12 or more months of a consecutive 22-month period, as of March 9, 2022, the filing date of the second motion for permanent custody. Thus, the trial court found the existence of the circumstances in R.C. 2151.414(B)(1)(d).

{¶ 44} Even assuming that the trial court erred in considering and applying R.C. 2151.414(B)(1)(d), the trial court separately determined that alternate grounds exist in R.C. 2151.414(B)(1)(a) to support granting permanent custody to FCCS. Even though only one of the four circumstances in R.C. 2151.414(B)(1) are required, "a trial court may cite more than one factor in the alternative." *In re N.W.*, 2008-Ohio-297, at ¶ 9.

{¶ 45} A finding that a child cannot be placed with either parent within a reasonable period of time, supported by clear and convincing evidence, obviates the need to wait 12 months before filing a permanent custody motion based on R.C. 2151.414(B)(1)(d), and renders a determination based on the 12 out of 22-month standard harmless. *In re D.C.*, 12th Dist. No. CA2015-03-006, 2015-Ohio-3178, ¶ 34 ("while the juvenile court erred in finding that [the child] had been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period, the error was harmless as such a finding is unnecessary to a determination that the children cannot or should not be placed with either parent").

{¶ 46} Permanent custody motions are routinely amended to comport with new circumstances. *In re V.B.-S.*, 10th Dist. No. 13AP-478, 2013-Ohio-5448 (trial court determination that permanent custody was in the child's best interest and the child had been in temporary custody 12 out of a 22-month period, affirmed where FCCS filed an amended motion 9 months after the initial motion, adding the 12 of 22-month period allegations); *see In re A.G.*, 9th Dist. No. 28861, 2018-Ohio-2835 (children services agency's amended motion for permanent custody after the death of the child whose medical neglect initially caused the agency's involvement).

{¶ 47} We found that permanent custody was proper when a child had not been in an agency's custody for 12 of 22 consecutive months at the time a motion alleging those circumstances was filed, but the first part of the permanent custody test was met when an amended motion was filed alleging the child could not be placed with either parent. *In re*

*L.M.*, 10th Dist. No. 06AP-534, 2007-Ohio-1596, ¶ 27 (the trial court decision was supported under R.C. 2151.414(B)(1)(a), and "we need not determine whether the trial court's reliance on R.C. 2151.414(B)(1)(d) is proper by virtue of the amended motion"); *In re M.W.*, 10th Dist. No. 11AP-524, 2011-Ohio-6392 (FCCS filed an amended motion for permanent custody adding the 12 of 22-month allegation after a child had been in temporary custody over 12 months of a consecutive 22-month period).

{¶ 48} While parents in a permanent custody proceeding must be afforded procedural and substantive protection, courts must liberally construe and interpret the sections of R.C. Chapter 2151, " ' "so as to provide for the care and protection of children and their constitutional and legal rights." ' " *In re T.W.*, 12th Dist. No. CA2014-07-100, 2014-Ohio-5753, ¶ 19, quoting *In re Shumate*, 5th Dist. No. CT2002-0051, 2003-Ohio-2509, ¶ 14, quoting *In re Baby Boy Blackshear*, 90 Ohio St.3d 197, 200 (2000), fn. 2. Parents clearly have paramount interest in their children, but this interest is by no means absolute and is " ' "always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." ' " *In re O.C.*, 8th Dist. No. 110568, 2022-Ohio-190, ¶ 52, quoting *In re L.D.*, 8th Dist. No. 104325, 2017-Ohio-1037, ¶ 29, quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 49} "[W]e find no error because the court's decision reflects that the court considered R.C. 2151.414(B)(1)(a) in the alternative while also making its finding under R.C. 2151.414(B)(1)(d)." *In re J.F.*, 8th Dist. No. 105504, 2018-Ohio-96, ¶ 52. In fact, FCCS was held to a higher evidentiary standard in proving grounds pursuant to R.C. 2151.414(B)(1)(a) since it had to prove that reunification was not possible, as opposed to the fact that the children had been in temporary custody 12 out of 22 consecutive months.

{¶ 50} D.M.'s first assignment of error is overruled.

{¶ 51} K.P. argues as her second assignment of error that the trial court erred when it failed to comply with R.C. 2131.031 and 2131.032. The sections relate to the consideration of a party's disability during a custody or parenting time proceeding.

{¶ 52} On April 3, 2023, a new revised code section was enacted, which reads:

> (A) No court, public children services agency, private child placing agency, or private noncustodial agency shall deny or limit a person from any of the following solely on the basis that the person has a disability:

(1) Exercising custody, parenting time, or visitation rights with a minor;

(2) Adopting a minor;

(3) Serving as a foster caregiver for a minor;

(4) Appointment as a guardian for a minor.

(B) Division (A) of this section shall not be construed to guarantee or grant a person with a disability a right to conduct activities or exercise authority as described in that division.

R.C. 2131.031. "Supportive services" is "any service provided through a program or agency at the federal, state, or local level that is intended to assist a person with a disability with day-to-day responsibilities and activities, including those associated with the care and supervision of a minor." R.C. 2131.03(B).

{¶ 53} The statute places a duty on a court or agency to "determine whether modifications or supportive services designed to assist the person regarding the activities or authority are necessary and reasonable." R.C. 2131.032(A). If a court makes the determination, it must "make specific written findings of fact and conclusions of law providing the basis for its determination." R.C. 2131.032(C).

{¶ 54} "[A] change to a relevant statutory provision should have no bearing on a case already pending before the court, unless the legislature specifically expressed its intent to implement the amendment retroactively." *Heyman v. Heyman*, 10th Dist. No. 05AP-475, 2006-Ohio-1345, ¶ 9. G.M. has been in the temporary custody of FCCS for over two years, so there can be no further extensions to apply the new statute. *In re J.R.*, 10th Dist. No. 17AP-698, 2018-Ohio-1474. The activities outlined in the new statute would have to occur during this time.

{¶ 55} FCCS has a substantial history over the two and one-half years, and the record indicates that there was effort to accommodate D.M.'s disability. However, FCCS did not make an express determination that any modifications were necessary and reasonable because the statute was not in effect during that time. K.P. concedes as much in her brief by acknowledging FCCS may be excused from the requirements. (K.P.'s Brief at 27.) However, K.P. argues that the trial court is not excused and must make a written finding regarding the supportive services FCCS is excused from providing.

{¶ 56} A disability does not preclude a trial court from terminating parental rights "when the parent, even on the basis of a disability, is unable to meet his or her child's needs." *In re B.A.*, 8th Dist. No. 104496, 2016-Ohio-7786, ¶ 10. "[A] child is entitled to a minimum level of care regardless of the special needs or restricted capabilities of his or her parents." *Id.*

{¶ 57} A trial court is guided by R.C. Chapter 2151 in making a permanent custody determination. *In re T.W.*, 10th Dist. No. 19AP-700, 2020-Ohio-4712. A parent's disability has always been a factor in a custody or visitation action. In a matter regarding the allocation of parental rights, the trial court must consider the parent's mental and physical health. R.C. 3109.04(F)(1)(e). Likewise, in a permanent custody proceeding, in a determination that a child cannot be placed with a parent, the physical disability of a parent is a factor. R.C. 2151.414(E)(2).

{¶ 58} The statute was not in effect during the time G.M. was in agency custody and the parents were working their case plan, and only became law after the permanent custody hearing had started. The statute became effective after this case had been pending for almost three years. It is not realistic to impose new duties after a trial has commenced. *In re B.D.*, 9th Dist. No. 30194, 2022-Ohio-1832.

{¶ 59} K.P.'s second assignment of error is overruled.

## V. CONCLUSION

{¶ 60} Having overruled K.P.'s two assignments of error and D.M.'s three assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch is affirmed.

*Judgment affirmed.*

DORRIAN and EDELSTEIN, JJ., concur.

————————————